ROBERTS & HOGE v. PIPKIN & McCALLUM.

McINTYRE, ASSIGNEE, v. MARLBORO WHOLESALE GRO-
CERY.

1. INJUNCTION—RECEIVER.—A Judge cannot grant a temporary injunc-
tion in an action looking to the appointment of a receiver on an *ex
parte* application, without requiring plaintiff to enter into bond of
not less than $250; and if he do so, the parties so enjoined are not
bound by it.

2. RECEIVER.—If a Judge appoint a receiver *pendente lite,* and the party
defendant in possession of the goods offers the Judge a bond ap-
proved by the clerk of Court as to form and sufficiency conditioned
to account for and deliver the goods to be put in the possession of
the receiver, the order is thereby nullified.

Before BUCHANAN, J., Marlboro, November, 1901.   Re-
versed.

Two actions: (1) Roberts & Hoge *v.* Pipkin & McCal-
lum, Marlboro Wholesale Grocery, Bank of McColl and
Bank of Marlboro.   (2) Hugh B. McIntyre, assignee, *v.*
Marlboro Wholesale Grocery Company, Roberts & Hoge
and Bank of McColl.   From orders below, both plaintiffs
and Marlboro Wholesale Grocery Co. appeal on following
exceptions:

Marlboro Wholesale Grocery Co. as follows:

"I. Because his Honor erred in holding that the com-
plaint in the case first above stated was sufficient to entitle
the plaintiff to the appointment of a receiver of the goods
and chattels embraced in the mortgage executed by Pipkin
& McCallum to the said Matheson and Exum; whereas, it is
respectfully submitted, he should have held that said com-
plaint, for that purpose, was defective, in that there was no
allegation of fraud or of fraudulent intent, or other allega-
tion affecting the validity and integrity of said mortgage,
nor was there any evidence in the affidavit, submitted in
support of the motion for appointment of a receiver, suffi-
cient to authorize the appointment of same.

"II. Because the complaint in said second above entitled action showed no equity whereby the plaintiffs were entitled to the aid of the chancery powers of this Court, to obtain the possession of the goods and chattels embraced in said mortgage, from these defendants.

"III. Because his Honor erred in not holding that the action of Roberts & Hoge, first above entitled, was practically an action of claim and delivery, so far as the goods and chattels covered by the mortgage of said Pipkin & McCallum to these defendants is concerned; and, being such, showed no equity as against these defendants, and such action could not be maintained, these defendants being first mortgagees, and the condition of said mortgage being broken.

"IV. Because his Honor erred in holding that the complaint, in the second above entitled action, stated facts sufficient to entitle the plaintiff to the relief demanded; whereas, it is respectfully submitted, his Honor should have held that said complaint was fatally defective, in that there were no allegations therein that at the time of the execution of the said chattel mortgage, (a) the said Pipkin & McCallum were insolvent; (b) that the transaction was entered into by Pipkin & McCallum with a view to give a preference to Matheson and Exum; (c) that Matheson and Exum had reasonable cause to believe that Pipkin & McCallum were insolvent at the time; (d) that Matheson and Exum had reasonable cause to believe that such transaction was made by Pipkin & McCallum in fraud of the provisions of the statute of this State regulating general assignments for the benefit of creditors; and further, that said complaint contained no allegation that said mortgage was fraudulent under the Statutes of Eliazbeth or of the assignment laws of this State.

"V. Because his Honor erred in holding that, by the mere signing of the orders of injunction granted by him in the two causes, the Court thereby obtained possession of and dominion over said goods and chattels, and the seizure

thereof, or attempt to seize the same, by Matheson and Exum, under their mortgage, the condition thereof being broken, was a violation of said order, and their acts in that respect were absolutely nugatory and of none effect.

"VI. Because his Honor erred in holding that the allegations of the complaint, and the matters and things set forth in the affidavits in support of the motion for the appointment of a receiver, were sufficient to authorize the appointment of the same, in that neither of said complaints alleged, nor did the affidavits establish *prima facie* or otherwise, (1) that said mortgage was executed or taken contrary to the provisions of the Statutes of Elizabeth; (2) that the same was executed or taken contrary to the statutes of this State regulating assignments for the benefit of creditors; (3) that said mortgage debt was paid; (4) that the condition of said mortgage being broken, these defendants, the mortgagees, had no right to seize said goods and chattels.

"VII. Because his Honor erred in not holding that the defendants, Matheson and Exum, as mortgagees, were in the right and lawful possession of said goods and chattels, the condition of said mortgage being broken, and that such possession, right of possession, should not be interfered with by the Court in the appointment of a receiver thereof, under the allegations of the complaint herein, and the facts disclosed by the affidavits.

"VIII. That his Honor erred in not holding that the temporary injunction granted on the *ex parte* application of the plaintiff in both actions, was void, in that said order restraining the defendants "from removing, disposing of or selling any portion of said goods, wares, merchandise and other property," &c., no security having been given, as required by the act of the General Assembly of this State, entitled "an act to regulate the appointment of receivers by the Courts of this State in causes therein," approved March 5, 1897.

"IX. Because his Honor erred in continuing said injunction indefinitely, without requiring any security on the part

of the plaintiffs, contrary, it is respectfully submitted, to the laws of this State.

"X. Because his Honor, in granting the order appointing a receiver, erred in not inserting in such order a provision vacating such appointment upon the party claiming the property so sought to be placed in the hands of a receiver, or the party in possession thereof entering into a bond, in accordance with the provisions of the statute aforesaid, to regulate the appointment of receivers.

"XI. Because the defendants, Matheson and Exum, having executed the bond or undertaking provided for in the act aforesaid, to regulate the appointment of receivers, they claiming the property so sought to be placed in the hands of a receiver, and that they were in possession thereof, his Honor erred in refusing to grant an order vacating the appointment of the receiver and requiring the delivery to them of the goods and chattels embraced in the mortgage executed to them by Pipkin & McCallum."

Roberts & Hoge on the following:

"I. Because his Honor erred in combining the said two cases and appointing a receiver to take charge of all the property lately owned by Pipkin & McCallum, defendants in the action first above.

"II. Because his Honor erred in not appointing the said receiver solely for the goods and chattels contained in the mortgages of personal property involved in the action first above, as was demanded in the same.

"III. Because the said action brought by Roberts & Hoge, the appellants herein, was a proper action for the appointment of a receiver, and his Honor should have so held, and should have dismissed the 'Rule to Show Cause' in the second action named above.

"IV. Because his Honor should have held that the second action above brought by Hugh B. McIntyre, assignee, is not such an action as is authorized to be brought by sec. 2147 of vol. 1, of the Revised Statutes of 1893."

Hugh B. McIntyre, assignee, on the following:

"I. Because it is respectfully submitted that the property of the said firm, having been, on the 24th day of October last, assigned to this appellant for the benefit of creditors under a general deed of assignment without preferences, his Honor should have held that the title of this appellant to all and singular the said property, is good in law and in equity against the claim of the Marlboro Wholesale Grocery and the said Roberts & Hoge and all other creditors, and should have ordered that the said property be held by this assignee, and that such as the Marlboro Wholesale Grocery has wrongfully seized should be delivered to him, in order that the same should be administered by this assignee as trustee for all the creditors, due regard being had to all valid liens subsisting thereon.

"II. Because it is a fact, according to the contention of the said assignee, that the said deed of assignment was duly executed and delivered before the said seizure by the said Marlboro Wholesale Grocery.

"III. Because this appellant, as assignee and trustee of an express trust, had duly instituted suit against the said Marlboro Wholesale Grocery and the said Roberts & Hoge, for the purpose of having their respective mortgages declared fraudulent and void, both at common law and under the laws of South Carolina regulating and governing assignments, and furthermore, with a view to have the mortgage of the said Marlboro Wholesale Grocery declared paid and satisfied.

"IV. Because in this attitude of affairs and state of pleadings, his Honor should have held that this assignee is entitled to hold and administer all and singular the said property, personal and real, and under the terms of the said assignment it was error in the Judge to take it out of his possession and place it in possession of a receiver."

*Messrs. H. H. Newton* and *P. A. Wilcox,* for Roberts & Hoge, cite: *Is action by R. & H. such an action as will au-*

*thorize the Court to appoint a receiver?* 51 S. C., 44; 1 Strob. Eq., 335; 2 Wait's Actions and Defenses, 205; Beach on Receivers, sec. 10; 3 Pom. Eq. Jur., sec. 1331. *Jurisdiction of Court over goods attached upon signing of temporary injunction, and assignment could not be lawfully made thereafter:* Code, 160; 22 Stat., 510; 13 Ency., 1 ed., 883; 1 Johns. Ch., 566; 2 Johns. Ch., 44; 1 McC. Eq., 146, *252; 2 Dana, 480; 31 Miss., 66; 37 Pa. St., 355; Beach Modern Eq. Jur., sec. 376; 1 DeS. Eq., *167. *As to effect on not giving bond on injunction order:* 5 S. C., 159; 56 Ala., 360.

*Messrs McColl & McColl,* for H. B. McIntyre, assignee, cite: *Mortgagee is not entitled to have receiver appointed:* 34 S. C., 77; 32 S. C., 134; 13 Ia., 352. *Assignment has preference over other liens:* 25 S. C., 467.

*Mr. Knox Livingston,* for Marlboro Wholesale Grocery, cites: *Showing for receiver not sufficient:* 27 S. C., 408. *The second action cannot be maintained under Rev. Stat., 2147:* 33 S. C., 451; 38 S. C., 457; 59 S. C., 315. *Error not to require undertaking in injunction:* Code, 243; 29 S. C., 491; 37 S. C., 223; 51 S. C., 379; 22 Stat., 510.

*Mr. T. W. Boucher,* for Marlboro Wholesale Grocery, cites: *Order continuing injunctions is void:* Code, 243; 29 S. E. R., 227. *This appellant entitled to goods after tender of bond:* 22 Stat., 510; 27 S. E. R., 947. *Showing for appointment of receiver not sufficient:* 19 S. C., 286; 3 S. E. R., 783; 33 S. E. R., 360. *Insolvent debtor may secure one creditor:* 44 S. C., 183; 59 S. C., 515.

March 29, 1902. The opinion of the Court was delivered by

MR. JUSTICE POPE. In general terms, the first action above stated may be said to have raised questions: (1) As to the effect of the mortgage executed on the 17th August, 1901, by and between the defendants, Pipkin & McCallum,

17—63

and the Marlboro Wholesale Grocery Company, two firms doing business at Bennettsville, in Marlboro County, in this State, and of the mortgages executed by Pipkin & McCallum to the Bank of McColl on the 31st March, 1899, and another between the same parties dated in January, 1901, but not recorded until the 17th September, 1901. The plaintiffs had the firm of Pipkin & McCallum to execute a mortgage of certain real estate in Bennettsville and at McColl, both in Marlboro County, in this State, as well as a mortgage on their merchandise in their two stores in Bennettsville, and their one store in McColl. The Bank of Marlboro held a mortgage on the lot of land of Pipkin & McCallum, in the town of Bennettsville. (2) The right of the plaintiffs to have all of said property, real and personal, mortgaged by Pipkin & McCallum to the several defendants, sold by the order of Court and the proceeds distributed amongst the holders of such mortgages according to the respective rights of said mortgagees. (3) Allegations that under the mortgage held by the Marlboro Wholesale Grocery and by collusion of the defendants, Pipkin & McCallum, with the said Marlboro Wholesale Grocery, the stock in trade of the said Pipkin & McCallum was being sold, thereby depleting said stock in trade, to the injury of the plaintiffs.

The second action was between the assignee of Pipkin & McCallum, under a deed of assignment made on the 24th October, 1891, of the whole property by said Pipkin & McCallum for the benefit of all their creditors without any preference, and the defendants, Marlboro Wholesale Grocery, the firm of Roberts & Hoge and the Bank of McColl, wherein it was asserted that the firm of Marlboro Wholesale Grocery had under their alleged mortgages seized the stock in trade, &c., of Pipkin & McCallum in their two stores in Bennettsville and one store in McColl, and also that said mortgage was illegal and had actually been fully paid; that the second mortgage held by the Bank of McColl was in-

valid; and that the firm of Roberts & Hoge held an invalid mortgage.

Under the complaint in the first named action and an affidavit of a Mr. Wilcox, as the agent of Roberts & Hoge, the Circuit Judge, Judge Buchanan, on the *23d day* of October, 1901, at chambers, granted the following order, to wit (omitting the caption) : which, with the following quotations, are taken from the "Case :"

"Upon hearing the verified complaint in the above case and the affidavit of C. A. Wilcox, and it appearing that the summons has been duly lodged for service in the sheriff's office for Marlboro County aforesaid; on motion of H. H. Newton, Esq., attorney for the plaintiffs, it is ordered, that the summons and complaint and affidavit of C. A. Wilcox, together with this order, be filed in the clerk's office for said county, and that copies of the said summons and complaint be served on all the defendants in the action; and that a copy of said affidavit of Wilcox and a certified copy of this order also be served on the defendants, Pipkin & McCallum and Marlboro Wholesale Grocery, and that the said Pipkin & McCallum and Marlboro Wholesale Grocery do show cause before me, at my chambers in Darlington, S. C., on the 30th October, A. D. 1901, at 11 o'clock A. M., or as soon thereafter as counsel can be heard, why a receiver of all and singular the goods and chattels, merchandise, &c., covered by the chattel mortgages involved in this action should not be appointed to take charge of the same and hold them subject to the order of the Court. It is further ordered, that the defendants, Pipkin & McCallum and Marlboro Wholesale Grocery, their and either of their servants, agents and employees, in the meantime and till the further order of the Court, be enjoined and restrained from removing, disposing of or selling any portion of said goods, wares, merchandise and other property covered by said chattel mortgages, and from paying the proceeds thereof to any person whomsoever.

"No bond, undertaking or other security was executed or filed either before or after the granting of said order.

"On the verified complaint * * * (in the second action above named), and on motion of D. D. McColl, Esq., of the firm of McColl & McColl, attorneys for the plaintiff, for a preliminary injunction against the above named defendants, and sufficient reason appearing why the same should be granted, it is hereby ordered, that until the further order of this Court, that said defendants, Marlboro Wholesale Grocery and Roberts & Hoge, be and they are hereby enjoined and restrained from disposing of or in any manner interfering with the estate and property heretofore owned and possessed by the firm of Pipkin & McCallum, and heretofore assigned to this plaintiff, and that they be restrained from attempting to dispose of or in any manner interfering with said estate; and the defendant, Bank of McColl, is likewise restrained from interfering with said estate. Let said defendants or their attorneys show cause on the verified complaint herein, on November 2d, 1901, before this Court, at Darlington, S. C., why the foregoing order, or some order of like import, should not be continued in full force and until the final judgment in this action.

"No bond, undertaking or other security was filed or executed at the time of granting above order, and none has since been filed or executed. The order was granted solely upon the verified complaint, and the affidavits hereinafter incorporated were submitted in reply to the return made by the defendants, the Marlboro Wholesale Grocery.

"To these two orders returns were duly made and many affidavits on each side to the two actions, and the same came on to be heard before his Honor, Judge Buchanan, * * * (who on November 20, 1901, made) the following order:

" 'The rule to show cause in each of the above stated cases and the returns thereto were, by consent of counsel engaged therein, heard before me, at chambers, together. After hearing these rules and the returns thereto and argument of counsel in each case, for and against said rules, it is ordered, that the injunction orders heretofore granted in the said two

cases be continued of force until the further orders of this Court.

" 'It is further ordered, that the property which is the subject matter of the litigation in the said two cases, to wit: the property, real and personal, of the firm of Pipkin & McCallum, be turned over by the parties claiming to be in possession thereof to the receiver herein appointed, who is hereby ordered to take into his custody all and singular the said property, real and personal, and keep the same subject to the further order of this Court.

. " 'It is further ordered, that the receiver be and is hereby invested with all the powers usually appertaining to the office of receivers appointed by this Court. It is further ordered, that the defendants in each of said cases, and the plaintiffs as well and the agents and servants and employees of each of them, be restrained from selling, assigning, transferring or in any manner receiving, incumbering or interfering with any of the said property set forth in either or both of said actions, to wit: all and singular the personal and real property of the said firm of Pipkin & McCallum, contained and set forth either in the deed of assignment or in the mortgages of the plaintiffs, Roberts & Hoge, and of the defendants, the Marlboro Wholesale Grocery Company and Bank of Marlboro and Bank of McColl.

" 'It is further ordered, that Walter S. Rowe is hereby appointed receiver of all and singular the said property, both real and personal, of the said firm of Pipkin & McCallum, and is hereby authorized and directed to take charge thereof, and to preserve and hold the same subject to the order of this Court, and to administer the same under its direction; and that he be and hereby is invested with the powers, duties and responsibilities usually appertaining to the office of receiver, upon his entering into bond, with good and sufficient sureties, before the clerk of this Court, and to be approved by said clerk in the penal sum of $15,000, conditioned for the faithful discharge of his duties, which said bond must be entered into before the said W. S. Rowe takes

charge of the said property and enters upon his said duties. It is further ordered, that Hugh B. McIntyre, as assignee, and the Marlboro Wholesale Grocery Company, do turn over and deliver to said W. S. Rowe, receiver herein, all the books and choses in action belonging to the said firm of Pipkin & McCallum and all other property covered by the deed of assignment, and that said receiver be and hereby is, authorized, empowered and directed to collect the outstanding indebtedness of the concern, and if necessary to institute suit therefor, when advisable or expedient in his judgment so to do. It is further ordered, that the parties to the said two actions, any or either of them, may apply at the foot of this order, whenever so advised by this Court, for further orders in the premises pertaining to the administration of the said estate by the said receiver or to the exercise of his said duties. The compensation of said receiver may be fixed by any future order of this Court, upon application and due notice thereof either in open Court or at chambers, according to the election of those interested therein. It is further ordered, that the property covered by the chattel mortgages involved in this case be valued at $4,000, and that all of the other property of the said Pipkin & McCallum be valued at $3,500. This order is not to be considered as passing upon the status of the assignee of Pipkin & McCallum to bring this action. This remains to be determined.' "

"Upon the foregoing order being granted and filed with the clerk of Court, the defendants, Matheson and Exum, forthwith executed a bond, in accordance with the provisions of the act of the General Assembly of the State of South Carolina, 'To regulate the appointment of receivers,' &c., approved March 5, 1897, which said bond was approved, both as to form and sufficiency, by said clerk, and moved the Court to grant an order to vacate the appointment of said receiver, in accordance with the provisions of the act aforesaid. His Honor refused to sign the proposed order, or one of like purport, simply indorsing upon the one presented the

following: 'I cannot sign the within order. O. W. Buchanan, Judge presiding. November 22, 1901.'

"The defendants, Matheson and Exum, then executed an undertaking, in accordance with section 350 of the Code of Civil Procedure, which as to form and sufficiency was also approved by the clerk of said Court, and a copy of which, together with the notice and grounds of appeal, was served on plaintiff's attorneys in each of said cases November 22, 1901. An application was then made to his Honor to stay the execution of the order appointing said receiver, requiring the delivery of. said property, &c., but this he also refused."

Quite a number of exceptions were taken to these orders of the Circuit Judge. The report of this case should contain all the exceptions. In the view we take of this matter, we are almost forced to the conclusion that the power of the Circuit Judge to issue the two preliminary orders of injunction lie at the threshold of this investigation. If the.statutes of this State negative the power of the Circuit Judge to pass his order of the 23d of October, 1901, it seems to us that the discussion is narrowed down to a small limit. However, if the Circuit Judge had the power to issue these preliminary injunctions, did he have the power to appoint a receiver under the laws of this State regulating the same? Under the views we entertain of this appeal, we will decline to discuss any other question than these two just stated.

1. Did the Circuit Judge have power to grant the two preliminary orders of injunction? The act entitled "An act to regulate the appointment of receivers by the Courts in causes therein," approved the 5th day of March, A. D. 1897, see 22d Statutes at Large, 510 and 511, in its 2d section uses this language: "The Court or Judge may by temporary injunction, without notice, pending the hearing of such application, restrain the delivery of the property or any part thereof sought to be put in the hands of a receiver to any other person whomsoever, and *the Court shall be deemed to have taken jurisdiction over such property from the time of the issuance of such tem-*

*porary injunction: Provided,* That no such temporary injunction shall issue so as to interfere with the use and disposition of such property by any person or corporation in the usual and customary mode and course of business and use of the same, without the Court or Judge first requiring from the party applying for such injunction a bond, with security, in a sufficient sum not less than $250, to pay all damages arising from said temporary injunction, should no receiver be appointed on the hearing of the application." It is obvious from the terms of this act that the power in a Circuit Judge, either during term time or at chambers, to pass an order for a temporary injunction, in an action looking to the appointment of a receiver, is bottomed upon a bond to be made by the person applying for such temporary injunction for not less than $250, as a condition precedent to the lawful use of such power to issue such injunction. The act so specifically provides. For the Circuit Judge to acquire such jurisdiction on an *ex parte* application, without notice to any one, so that the Court shall be deemed to have taken jurisdiction over such property from the time of the issuance of such temporary injunction, it is a condition precedent thereto that a bond from the party applying for such injunction in the amount of not less than $250 shall have been executed. It is admitted in the case for appeal, that no such bond was executed in any manner or form whatsoever. The effect of such failure to execute such a bond is that the Circuit Judge had no power to issue such a temporary injunction, and that such Circuit Judge did not, in the case at bar, acquire jurisdiction over the property of Pipkin & McCallum on the 23d day of October, 1901; hence, so far as the order for temporary injunction issued by him on that day is concerned, Pipkin & McCallum and the Marlboro Wholesale Grocery were not controlled by such order of preliminary injunction. If such order of Judge Buchanan had been in force from the 23d of October, 1901, Pipkin & McCallum could not have made an assignment of their property at any hour on the 24th day of October, 1901, nor could the defend-

ants, the Marlboro Wholesale Grocery, have taken posses-
sion under their mortgage of the stock of goods, wares and
merchandise of the firm of Pipkin & McCallum.

2. Did the Circuit Judge have the power to appoint a re-
ceiver of the property of Pipkin & McCallum by his order
passed on the 20th day of November, 1901?   We answer
that he did not, so far as Pipkin & McCallum are
concerned, because sec. 3 of the act of 1897, here-
tofore cited, expressly provides: "No receiver of the
property of any person or corporation shall. be hereafter
appointed *before final judgment* in the cause, if the party
claiming the property so sought to be placed in the hands of
a receiver or the party in possession thereof shall offer a
bond in the penalty of double the value of the property, with
sufficient security, approved by the clerk of the Court of
Common Pleas or of the Courts in which the action is
brought, to fully account for and deliver over whenever
thereafter required by any final adjudication in the cause,
the property sought to be placed in the hands of a receiver,
and to meet and satisfy any decree of judgment or order
that may be made in the cause."   In the case at bar, a bond
according to the requirements of this act was presented to
the Circuit Judge by the Marlboro Wholesale Grocery, one
of the defendants.   When this was done, the order of the
Circuit Judge appointing a receiver was without any legal
force.   It will be observed at the close of the act, the usual
form of revocation of all former acts or parts of acts incon-
sistent with the act of 1897 was inserted.

Such being the conclusions of this Court, thereby denying
validity to all the orders passed in the two actions herein,
we have concluded that it would be not only inexpedient but
unlawful for us to consider any other questions presented by
the appellants.   Both causes must, therefore, be recommitted
to the Circuit Court, for such action as may be necessary,
untrammeled by the orders of Judge Buchanan and all the
proceedings before him.

It is the judgment of this Court, that the judgment or

orders appealed from be reversed and the two actions remanded to the Circuit Court.

,.MR. JUSTICE GARY *concurs in result.*