12102

SOUTHERN RAILWAY CO. v. DAY

(138 S. E., 870)

1. ESTOPPEL—EVIDENCE HELD FOR JURY ON QUESTION OF ESTOPPEL OF RAILROAD TO REQUIRE REMOVAL OF BUILDING FROM RIGHT OF WAY. —In railroad's action to compel removal of building from premises alleged to be part of its right of way, and for injunction against further encroachments, evidence *held* for jury on question whether railroad by acquiescing in construction and maintenance of building, was estopped to require removal.

2. ESTOPPEL—ESTOPPEL ARISES WHEN ONE EXECUTES A DEED, OR DOES SOME ACT PRECLUDING HIM FROM AVERRING ANYTHING TO CONTRARY.—An estoppel arises when a person executes some deed, or is concerned in or does some act which will prevent him from averring anything to the contrary.

3. ESTOPPEL—MERE SILENCE WILL NOT RAISE AN ESTOPPEL, THOUGH IT MAY DO SO UNDER STATED CIRCUMSTANCES.—Mere silence of itself will not raise an estoppel, though silence of one under a duty, and having an opportunity, to speak will give rise to estoppel, provided such person has knowledge of facts of which adverse party is ignorant.

4. ADVERSE POSSESSION—RIGHT OF WAY MAY BE HELD ADVERSELY TO RAILROAD BY ONE WHO HAS ERECTED PERMANENT STRUCTURE THEREON, AND GIVEN NOTICE OF INTENT TO CLAIM ADVERSELY.—Adverse possession may run against a railroad in favor of one claiming adversely to its easement in its right of way, when such adverse claimant has (1) erected on such right of way a permanent structure, and (2) given notice to railroad of an intention to claim adversely to its right.

5. ESTOPPEL—ESTOPPEL MAY ARISE THOUGH PERIOD OF ACQUIESCENCE IS VERY SHORT.—An estoppel may arise, even though the period of acquiescence in matters giving rise to estoppel is very short.

6. ESTOPPEL—EQUITABLE ESTOPPEL OF RAILROAD TO REQUIRE REMOVAL OF ENCROACHMENTS ON RIGHT OF WAY DOES NOT DEPEND ON RUNNING OF 10-YEAR PERIOD AS FOR ADVERSE POSSESSION.—Running of 10-year period as for adverse possession is not essential to equitable estoppel of railroad to require removal of encroachments on easement of right of way.

7. APPEAL AND ERROR—IN RAILROAD'S SUIT TO REQUIRE REMOVAL OF ENCROACHMENTS ON RIGHT OF WAY, ADMISSION OF IRRELEVANT TESTIMONY AFFECTING OTHER PROPERTY HELD HARMLESS ERROR.—In railroad's action to compel removal of building from right of way, and for injunction against further encroachments, admission of

irrelevant testimony affecting property adjoining that directly involved *held* harmless error.

8. EVIDENCE—RELEVANCY OF TESTIMONY MUST BE LEFT LARGELY TO DISCRETION OF PRESIDING JUDGE.—Question of relevancy of testimony must be left largely to discretion of presiding Judge, subject to right and privilege of party to show relevancy of question when objected to.

9. APPEAL AND ERROR—RAILROAD, HAVING GONE TO TRIAL ON CAUSE OF ACTION FOUNDED ON DEED, COULD NOT COMPLAIN OF REFUSAL OF CHARGE RELATING TO ITS CHARTER.—Where railroad, suing to compel removal of encroachment on right of way, elected to go to trial on cause of action founded on deed, it could not complain of refusal of requested charge relating to its charter.

Before WILSON, J., Greenville, November, 1924. Affirmed.

Action by the Southern Railway Company against A. F. Day. Judgment for defendant, and plaintiff appeals.

The exceptions are set out below as directed by MR. CHIEF JUSTICE GARY in his dissenting opinion:

"(1) That his Honor erred in admitting the testimony of A. N. Bozeman, a witness for the defendant, over objection, as to what he had done with reference to erection of buildings on his property across the street from the property involved; it being respectfully submitted that Mr. Bozeman's property was not in any way involved, and such testimony involved the merits of another case contrary to the principle announced by the Supreme Court in the case of *Southern Railway Co. v. Howell,* 79 S. C., page 288; 60 S. E., 677, the same being incompetent, irrelevant, and immaterial.

"(2) That his Honor erred in making the following ruling in passing upon the motions for a directed verdict: 'I don't see where the ten years comes in. Of course, that may be a circumstance, but if it was for a month, a few weeks, or a year, or six months, if a person went believing he had the right to do certain things on the railroad's right of way and the officers of the railroad saw that being done, parties asserting the right to do it and stood by when good conscience says you must speak out and allow it to be done,

permitted to expend money, I don't think the ten years' proposition comes in at all'—it being submitted that said ruling was contrary to the law of South Carolina, in that his Honor in effect held and charged the jury that a railroad company could be estopped from asserting its title to a right of way by not acting in a month, a few weeks, etc., and that ten years' adverse possession had nothing to do with it, whereas the Court should have held that the railroad company could not be estopped from asserting its right unless it had been guilty of some direct act of misrepresentation or fraud which induced an innocent third party to act to his detriment and that the railway company had a right to bring an action within ten years to clear its right of way of obstructions.

"(3) That his Honor erred in not directing a verdict for the plaintiff and in holding as follows: 'I am going to tell the jury this: Gentlemen of the jury, if a party, for instance, a railroad company, has a right of way, if the railroad company sits idly by and allows an innocent party to spend money, believing he had a right to do it on the right of way of the railroad company and the railroad company knowing it and don't speak and object, and allow a party or parties to spend their money on there, knowing it to be done and don't object to it, why it is a matter for them to say in good conscience whether or not he is estopped Whether or not that was done I am going to leave that to the jury'—it being respectfully submitted that said ruling was erroneous in that:

"(a) It was a charge upon the facts, in that the Court, in charging as to the law of estoppel, made direct reference to 'a railroad' when the law of estoppel applies to any person or corporation, and in using the language quoted above the Court charged directly upon the facts of the case.

"(b) The doctrine of equitable estoppel had no application to this case, as there was absolutely no evidence upon which to submit this principle to the jury; the railroad company not

having been guilty of any misrepresentation of fraudulent act, and the defendant and his predecessors having admitted that they made no inquiry whatever as to the width of the right of way.

"(c) The Court overlooked the fact that the defendant and his predecessors were the owners of the fee and could use the land for any purpose not inconsistent with the railroad's use, and that the matter of an inconsistent use is one of law for the Courts, and that the railroad company would have a right of action any time within the Statute to test the question of inconsistency.

"(4) That his Honor erred in charging the jury as follows: 'But I tell you that is what estoppel is; it is where a party, although he may have the best title, if he allows a man, believing he has a title, to go and expend his money on the property of the other man and the other man stands by and allows that done to the other man's injury, when he ought to speak in good conscience, the law says you are estopped'—it being respectfully submitted that this was an erroneous statement of the law, and such law had no application to the case at bar, in that defendant and his predecessors had title to the property and plaintiff had a mere easement, a public trust, to wit, a right of way for public purposes, which it was its duty to keep open for benefit of the people, and, as the defendant and his predecessors had the fee-simple title in said property, plaintiff could only bring action when they had used said property in a manner inconsistent with the railroad's use, and a wooden store building 51 feet from the center of the track was not such an obstruction as to call for drastic action in a moment of time.

"(5) That his Honor erred in refusing plaintiff's third · request to charge, as follows: 'The jury is charged that, if the Greenville & Columbia Railroad took possession of the right of way at the point in question under its charter, and that said railway and its successors, the Columbia & Greenville Railroad, occupied it under an unrecorded deed for a

period of thirty years or more, then the jury is charged that when said railroad was sold by order of Court that the plaintiff railroad company acquired whatever rights as were possessed by the original companies'—it being submitted that this was a proper statement of the law of the case, and the plaintiff was entitled to have the jury instructed that it had acquired the same rights as the original companies.

"(6) That his Honor erred in charging defendant's first request, as follows: 'The paper offered in evidence and upon which the plaintiff relies in this case, is before me for construction. It is my duty to construe it. I hold that it is not a deed, for the reason that it has not witnesses, and that two witnesses are necessary to every valid deed'—it being submitted that his Honor should have charged that the defect in the deed had been cured by more than thirty years' adverse possession, and the paper was a deed because the defect had been cured by more than ten years' adverse possession.

"(7) That his Honor erred in charging the jury as follows: 'A man may not have a right, gentlemen; he may think he has the right; you see that's the great importance here in the Court's establishing these rules. A man, as a matter of fact, may not have any right; he may think he has a right. He may not. He may be a trespasser, but he may be honest and really think that he has a right to do so and so. He goes and spends his money, may spend thousands; the other man knows the first man has no right; although the first man honestly believes that he did have the right the second man stands by, knowing the first man had no right to do it, and permits him to innocently go and spend maybe hundreds or thousands of dollars erecting property there at great cost, believing he had a right to do it. The law says that in good conscience the second man must assert his right and say, "You must not do that, that's my property"; and, if he stands by, by acts or words and does anything to encourage the man to go on and doesn't object when the law says he

ought to speak up, that's the doctrine of estoppel'—it being submitted that this was error in that:.

"A. It was a charge upon the facts,. intimating to the jury that defendant had 'spent maybe thousands' of dollars, in the absence of any testimony as to the cost of the building erected by defendant's predecessors.

"B. It was an improper and misleading statement of the law as the defendant and his predecessors owned the fee-simple title to the property and knew their·rights and should have known the railroad's rights.

"(8) That his Honor erred in not granting a directed verdict for the plaintiff, in that defendant's sole defense was the law of estoppel, and his Honor erred in holding that this issue should go to the jury, inasmuch as one of the main foundations to the assertion of the doctrine of estoppel is innocence and good faith on the part of·the one seting up this defense, and in this case defendant and his predecessor admitted that they made no inquiry whatever as to the status of the right of way before purchasing the property and before acting in the premises; that, .if defendant and his predecessor knew or ought to have known that the right of way at this point was 100 feet on either side of the center of the track, and were not deceived by any act or words of the plaintiff, then they could not rely upon estoppel, and there was absolutely no evidence of misconduct on the part of the railway company.

"(9) That his Honor, the presiding Judge erred in charging the jury the sixth request of·the defendant, as follows: 'I charge you that, if one person stands by and sees another erect permanent improvements upon land which said person knows to be his own, and does not object, but permits his neighbor to go on and finish·said improvements, then he is estopped by conduct and cannot after that claim the property'—it being submitted that said request embodied a proposition which was not sound law and which was improper and prejudicial in that:

"(a) It fixed no time when estoppel will take effect, but limits the time to the finishing of the alleged improvement.

"(b) It was error, in that this was an equity case, and in such cases the equitable doctrine of estoppel will not apply except in cases of nonaction for a period equal to that of the statute of limitations, to wit, ten years or more.

"(c) That under said request the railroad would be required to act immediately, when as a matter of law and equity the railroad would have ten years in which to act."

*Messrs. Frank G. Tompkins,* and *Bonham, Price & Poag,* for appellant, cite: *Defects in deed cured by adverse possession for statutory period:* 9 S. C., 269. *Possession effected prior to enactment of* Sec. 5313, Code, *not controlled by that act and does not amount to notice:* 112 S. C., 555; 22 S. C., 32. *Effect of possession under an unrecorded deed granting a right of way:* 72 S. C., 235; 79 S. C., 281. *Owner of the fee has right to use of right of way not incompatible with purposes for which easement granted or acquired:* 63 S. C., 269. *Doctrine of estoppel:* 84 S. C., 426; 67 S. C., 507; 99 S. C., 316; 107 S. C., 43; 123 S. E., 494; 10 R. C. L., 688, 692; 96 S. C., 133; 12 S. C., 352; 59 Pa., 214; 116 S. C., 482; 70 S. C., 206; 97 S. C., 129; 82 S. C., 24; 93 S. C., 397; 37 S. C., 335; 31 S. C., 153; 21 C. J., 1150; 1 Bay, 239; 57 S. C., 267, 279; 81 S. C., 329.

*Messrs. Dean, Cothran & Wyche,* for respondent, cite: *Doctrine of estoppel:* 82 S. C., 25; 89 S. C., 391. *Cases distinguished:* 79 S. C., 288. *Charge upon facts:* 81 S. C., 379.

November 11, 1926.

The opinion of the Court was delivered by Mr. Justice Stabler.

This action was brought by the plaintiff for removal of a building from premises alleged to be a part of its right of way and for an injunction to prevent further encroachments thereon.

The complaint sets out two causes of action growing out of the alleged encroachments; one of these being based upon its rights under its charter of 1845, and the other upon a deed from B. F. Perry and others, dated September 12, 1845, which was never recorded.

The defendant, answering, alleged: (1) That he and his predecessors, for more than 70 years prior to the beginning of this action, had used the property described in the complaint up to within 25 feet of the center of the roadbed of the plaintiff, without objection on the part of the plaintiff; (2) that the defendant had erected a permanent building on the said land as described in the complaint, with full knowledge on the part of the plaintiff of such building; (3) that the plaintiff had permitted practically all of its alleged right of way, which had been granted it by Perry and others, to be used and occupied permanently by other parties; (4) that the plaintiff had claimed in the past a right of way on and through the property now owned by the defendant of only 25 feet from the center of the track and that this right of way is sufficient for the uses of the plaintiff—and set up the defense, based on these alleged facts, of equitable estoppel.

Upon motion of the defendant to require the plaintiff to elect which cause of action it would proceed upon, the plaintiff elected to go to trial upon the cause of action founded on the deed.

At the close of the testimony for the plaintiff, the defendant made a motion for a nonsuit, which was overruled by the trial Judge. At the close of all the testimony, the plaintiff moved for a directed verdict on the ground that the doctrine of equitable estoppel was not applicable in this case. The defendant also moved for a directed verdict. Both motions were overruled, and the case was submitted to the jury, who found for the defendant.

The plaintiff now comes to this Court upon appeal by several exceptions, which impute error to the Circuit Court in four main particulars: (1) Error in the admission of

certain testimony; (2) error in refusing to direct a vedict for the plaintiff upon the grounds. submitted; (3) error in charging the law; (4) error in refusing to charge plaintiff's third request.

As to the second ground of imputed error: The record shows the following facts: In the early part of 1914, J. H. Dean and S. C. Calder, who then owned the property in dispute, erected thereon a small frame one-story wooden store building, the inside line of the building being approximately 51 feet from the center of the track. No objection was made by any employee or officer of the railroad company, although the building was in plain view of the track. Mr. Dean was under the impression that the right of way was only 100 feet from side to side—that is, 50 feet from either side of the track—but made no inquiry of any of the railroad officials. In 1917 Dean and Calder sold the property to the defendant A. F. Day, who afterwards sold it to the Day-Kloeckler Company, who in turn transferred it to Charley Kloeckler, who owns it at the present time and for that reason was made a party to the suit. At the time defendant Day purchased the property, several years after the erection of the building, he had no notice of the claim of the plaintiff to the property. The first complaint made was shortly before this action was commenced on July 1, 1922, approximately eight years after the building was erected.

In 10 R. C. L., 675, we find the following as to estoppel:

"An estoppel may be said to arise when a person executes some deed, or is concerned in or does some act, either of record or in pais, which will preclude him from averring anything to the contrary."

In 21 C. J., 1059, we find:

"In the broad sense of the term 'estoppel' is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and

proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, in pais."

While, as indicated, estoppel may arise in several different ways, it is necessary in the case at bar to consider only estoppel by conduct.

In *Bull v. Rowe,* 13 S. C., 355, it is said:

"As we understand it, estoppel by conduct is where one party has been induced by the conduct of the other to do or forbear doing something which he would not or would have done but for such conduct of the other party. Bigelow on Estoppel, 480. The conduct which is claimed to operate as an estoppel must have induced action, the disavowal of which would be inequitable, and which, therefore, the party who holds out the inducements is estopped from disavowing. There is no estoppel without fault to the injury of another."

In the present case the respondent contends that, when the railroad company stood by in silence, while the permanent structure was being erected upon its alleged right of way, knowing that such structure was being so erected, and allowed the party erecting it to invest his money and to build the structure without one word of protest, the company was thereafter estopped, by such silence and acquiescence, from asserting its claim to that part of the right of way upon which such permanent structure was erected.

In 10 R. C. L., 782, we find:

"It is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right, and permits such other to make expenditures or improvements under circumstances which would call for notice or protest, cannot afterwards assert his own title against such person."

In 21 C. J., 1160, the following is found:

"One who with knowledge of the facts and without objection suffers another to make improvements or expenditures on, or in connection with, his property, or in deroga-

tion of his rights under a claim of title or right, will be estopped to deny such title or right to the prejudice of that other who has acted in reliance on and been misled by his conduct."

In 21 C. J., 1150, the law as to estoppel through silence is thus stated:

"Mere silence of itself will not raise an estoppel. To make the silence of a party operate as an estoppel, the circumstances must have been such as to render it his duty to speak, and there must also be an opportunity to speak. And it is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. Nevertheless an estoppel may arise from silence as well as words. Inaction or silence may under some circumstances amount to a misrepresentation and concealment of the true facts, so as to raise an equitable estoppel. When the silence is of such a character and under such circumstances that it would become a fraud upon the other party to permit the party who has kept silent to deny what his silence has induced the other to believe and act upon, it will operate as an estoppel. The conduct of a party, sought to be made the basis of an estoppel in pais against him by silence, must be viewed in the light of the understanding he then had of his rights, and not in the light of such rights as they may be thereafter determined by the ultimate and conclusive adjudications of the Courts."

In 11 Am. & Eng. Ency. of Law (2d Ed.) 421, it is said:

"The most usual application of the doctrine of estoppel in pais arises from the misrepresentation or concealment of material facts on the part of the person to be estopped. Thus, it is a well-settled rule of equity which has been adopted by the Courts of law that where A has, by his acts of representation, *and by his silence* when he ought to speak out or intentionally or through culpable negligence induced

B to believe certain facts to exist, and B has rightfully acted on this belief, so that he will be prejudiced if A is permitted to deny the existence of such facts, A is conclusively estopped to interpose denial thereof." (Italics added.)

In *Nicholas v. Austin,* 82 Va., 817; 1 S. E., 132, we find this excellent statement of law:

"*Silence,* where it is so intended, or where it has that effect, to mislead a party, to his disadvantage, and to the other party's advantage, is an equitable estoppel; and passive acquiescence estops equally with active interference. He who is silent when conscience requires him to speak shall be debarred from speaking when conscience requires him to be silent."

In 21 C. J., 1162, the law as to the necessary conditions to support an estoppel through the erection of permanent improvements, is thus stated:

"It is essential that at the time the improvements are made the party against whom the estoppel is claimed should have been aware of his title to or interest in the property improved, or if he was ignorant of his rights that such ignorance was not the result of gross negligence, or that the title was not equally open to the notice of both parties. It is essential also that the party claiming the estoppel should have acted in ignorance of the other's title or interest and been influenced by the conduct of the party against whom the estoppel is claimed. The general rule applies only where the party making the improvements believes in good faith that he has a right to do so. So the rule has no application where the party against whom the estoppel is claimed had no knowledge of the expenditures or improvements, or that they were in contemplation. If the owner, as soon as he is informed of the expenditures or improvements, protests against their continuance and asserts his ownership to the property on which they are being made, no estoppel arises; and of course there can be no estoppel where the improvements are made

after express notice has been given that the party sought to be estopped claims the property and over his objections."

*Tarrant v. Terry,* 1 Bay, 239, was a case wherein fraud in a survey and estoppel by silence were both set up. The Court said:

"That the conduct of Lewis, in the first instance, was fraudulent, in the manner and for the reasons stated by the plaintiff's counsel. That, if the jury should be of the same opinion with him, they might consider Lewis' grant (although the first) void as far as it affected Tarrant's survey. That with respect to *the subsequent conduct of Lewis,* who was in the neighborhood, and saw Tarrant erecting his mill, under an impression that the land was included in his grant, without once hinting that the land was his, or forbidding him from going on, was, of itself, such a conduct, *even if there had been no fraud in the survey,* as would have forfeited his claim to the land in question. Therefore, in either point of view, whether the jury consider the fraud in the survey, or *the culpable neglect or omission afterwards,* the plaintiff was certainly entitled to a verdict." (Italics added.)

In *Caldwell v. Williams,* Bailey, Eq., 175, the Court said:

"If a man stands by, and sees another build a house on his land, without giving notice, he will lose his land; but I am not satisfied that the same consequence would follow, if he should see him clear and cultivate it for a year or two, and erect such temporary buildings as might be necessary for the purposes of that cultivation."

However, the appellant's counsel, in the trial of the case and before this Court on appeal, contended with great earnestness that, whatever may be the law of equitable estoppel, there can be no application of the doctrine to a railroad because of the use of its right of way by the holder of the fee therein, even though he has erected a permanent structure thereon, until the ten-year period necessary to claim by adverse possession has run, thus making a distinction in

this respect between railroad companies and other property owners.

We find no authority to support this contention, although we have examined all cases cited by appellant's counsel in support of his position. In some of these cases the title to the premises involved was claimed by adverse possession, and of course in such cases it was necessary for the full statutory period to run. Such a case is that of *Harman v. Southern Railway Co.,* 72 S. C., 235; 51 S. E., 689, upon which the appellant particularly relied. In that case the defendant had erected a fence on the right of way and was using a part of the right of way as a pasture. The Court, quoting with approval the earlier case of *Railroad Co. v. Beaudrot,* 63 S. C., 266; 41 S. E., 299, said that such an assertion of right to exclusive occupancy of the land was not compatible with the right of easement belonging to the railroad company, and, if such adverse holding should run for the statutory period, the easement would be defeated. A similar state of facts existed in the *Beaudrot case.* It is clear, however, that those cases are not in point with the case at bar. The claim in those cases rested on adverse possession. The claim in the case at bar rests on equitable estoppel.

The case of *Railroad Co. v. Land-Co.,* 109 S. C., 444; 96 S. E., 188, is instructive. In that case the owners of the fee in the railroad right of way continued, after the railroad was built, to use the right of way up to the track. They planted some of it and inclosed a part of it by a wire fence for pasture. They erected no structure, however, of a permanent nature on the right of way, nor did they make any use of it that was inconsistent with the railroad's use and occupancy of it; and they did not give to the railroad any notice of an adverse claim by them to the easement of the road in the right of way, until a street was laid out on a portion of the right of way. The Court, in speaking of the law governing in a case of that kind, said:

"According to the decisions of this Court, the owner of the fee in a railroad right of way has the right to use so much thereof as is not in the actual use and occupancy of the railroad company, provided the use be not inconsistent with the claim of right of way for the railroad purposes. It follows from this, and the rule that a right of way of a railroad, having been acquired for a public purpose, cannot be lost by prescriptive use or adverse possession unless by the erection of a permanent structure accompanied by notice to the railroad company of an intention to claim adversely to its right, that, under the facts stated, at no time did the plaintiff have a cause of action against the defendants or their predecessors in title until the street in question was constructed and attempted to be used under the assertion of a right to do so."

It will be observed, as held in this case, that adverse possession may run against a railroad company in favor of one claiming adversely to its easement in its right of way, when such party claiming (1) has erected upon such right of way a permanent structure, and (2) has given notice to the railroad company of an intention to claim adversely to its right. Only from the time of such notice the statute begins to run, and the railroad company may within the period of ten years bring action to oust the party claiming by adverse possession. But in such case the possession is knowingly hostile to the railroad company, and the principle of equitable estoppel is not applicable. "The estoppel may arise, even though the period of acquiescence is very short." 21 C. J., 1161. See, also, *Champ v. Nicholas County Court,* 72 W. Va., 475; 78 S. E., 361.

In the case of *Despard v. Despard,* 53 W. Va., 443; 44 S. E., 448, the Court quotes with approval from Herman on Estoppel and *Res Judicata,* Vol. 2, § 1061, as follows:

"Acquiescence in a transaction may bar a party of his relief in a very short period. Thus, if one has knowledge of an act, or it is done with his full approbation, he cannot

afterwards have relief. He is estopped by his acquiescence, and cannot undo that which has been done. So, if a party stands by, and sees another dealing with property in a manner inconsistent with his rights, and makes no objection, he cannot afterwards have relief. His silence permits or encourages others to part with their money or property, and he cannot complain that his interests are affected. His silence is acquiscence and it estops him."

The case of *Railroad Co. v. Victor Manufacturing Co.,* 93 S. C., 397; 76 S. E., 1091, is somewhat similar to the case at bar. In that case the railroad company claimed, through deed from Mrs. McKittrick executed in 1871, a right of way 200 feet wide. In 1895 the defendant purchased a part of the McKittrick land lying on the railroad and from time to time thereafter erected fifteen cottages thereon. These cottages were located on a strip of land lying between lines 50 and 100 feet from the center of the railroad track. Three or four of them were built in the fall of 1895, eight or nine in 1899 and three in 1904. Plaintiff made no objection, either while the cottages were being built or afterwards, until the commencement of the action, although they were in plain view of the railroad and it could have been easily seen that they were within 100 feet of the track. In January, 1905, an action was brought by the railroad company to enjoin the defendant from further using the strip of land lying between lines 50 feet and 100 feet from the center of the railroad track, which land was claimed by the plaintiff as part of the right of way, and to require the removal of the houses built thereon by defendant. The defendant set up, among other defenses, those of misrepresentation in the procurement of the deed from Mrs. McKittrick and estoppel. On the question of estoppel, the Court said:

"Aside from the misrepresentation, the facts above stated, and the circumstances of the use of the right of way beyond the 50 foot line by defendant, and others, even since the

execution of Mrs. McKittrick's deed, and the character of the structures placed thereon with the knowledge of plaintiffs, without objection by them, make out a clear case of estoppel. The character of the buildings forbids any other conclusion than that the railroad company must have known that the owners were building them under a belief that they had the right to do so. The company knew, or ought to have known, its own rights, for it had in its possession the McKittrick deed."

No reference was made to the lapsing of the ten-year statutory period.

In *Marines v. Goblet,* 31 S. C., 153; 9 S. E., 803; 17 Am. St. Rep., 22, the Court approved the following instruction to the jury:

"That, if the jury find that the plaintiffs deliberately stood by for years and without objection saw Goblet or others buying the land in dispute, and making improvements thereon, under the supposition that they had a good title, then the plaintiffs will now be estopped to set up their claim against them."

The case of *C. N. & L. Railroad Co. v. Laurens Cotton Mills,* 82 S. C., 24; 61 S. E., 1089, relied upon by the defendant, seems to be in point. In that case an action was brought by the railroad company to have removed from its right of way some thirty or forty store buildings erected thereon by the defendant, and for an injunction to restrain the defendant from further interfering with the plaintiff's right of way. The defendant claimed title to the land by purchase, and also by adverse possession, and that the improvements thereon complained of by the plaintiff were made in full view and with full knowledge on the part of the plaintiff, and that the plaintiff acquiesced in the erection of such improvements. On the trial of the case, one of the defenses being equitable estoppel, the trial Judge, at request of the plaintiff, charged the jury as follows:

"That the plaintiff cannot be estopped from asserting its rights in this case unless the following conditions existed at the time of putting the improvements on the right of way, to wit: (1) Unless the alleged silence was practiced by the authorities of the railroad company with a knowledge of the rights of the railroad company, both in fact and in law; and (2) unless Mr. Lucas, who is shown to have been acting for the cotton mill company, was ignorant in fact of the right of the railroad company; and (3) unless such silence was practiced with the intention that the cotton mill company should act upon it; and (4) unless the cotton mill company was induced by such silence so to act."

On appeal, the Supreme Court affirmed this charge as being a correct statement of the law, and further held that the following charge by the trial Judge as to equitable estoppel, in connection with the above, and which was complained of as error by the plaintiff, was also a correct proposition of law:

"I charge you that if one person stands by and sees another erect permanent improvements upon land which said person knows to be his own, and does not object, but permits his neighbor to go on and finish said improvements, then he is estopped by conduct and cannot after that claim the property."

The appellant contends that the doctrine of estoppel applied in that case, for the reason only that the houses had been erected upon the right of way of the railroad company for a period of ten years or more. We do not think this contention is correct. It is true that fifteen years elapsed from the time the houses were erected upon the right of way before the action was begun; but the Court charged the jury, which charge was approved by the Supreme Court as being the law applicable in the case, that, if one "permits his neighbor *to go on and finish said improvements,* then he is estopped by conduct and cannot after that claim the property." (Italics added.) Nowhere does it appear that the

Court considered the defendant's possession of the premises for the statutory period as an element of the estoppel.

We conclude that the running of the ten-year period as for adverse possession is not a necessary element of equitable estoppel, and that equitable estoppel may be applied to a railroad company, with reference to the easement in its right of way, the same as to private owners of property. In the case at bar there was some evidence of facts tending to create estoppel by the conduct of the officers of the railroad company in standing by in silence, with knowledge, and without protest, while another, relying on such silence and in good faith, erected a permanent structure upon the right of way. The question of estoppel was properly submitted to the jury, and the exceptions upon which this specification of error is based are overruled, as are all other exceptions in so far as they relate to the law of estoppel. We may remark in passing that a fuller charge as to the law of estoppel would have been desirable, but neither party to the suit called the trial Judge's attention to the matter.

As to the first ground of imputed error: The appellant complains by its first exception that the trial Judge committed reversible error in the admission of the testimony of A. N. Bozeman, a witness for the defendant, over the objection of the plaintiff. The following appears in the record:

"A. N. Bozeman, sworn, says: I have owned and still own some of this McBee property, across the street and on the same side of the track from defendant's property.

"Mr. Price: We object to testimony being offered as to any other property not involved in this action.

"After argument, the Court ruled: I think I will let you bring in testimony of lots just adjoining, not to go away up and down, but just in that immediate vicinity.

"I bought my property in 1902, and built a store building thereon 41 feet from the center of the track. Mr. Price

was my attorney and advised me my title was good. The section master in a little while served me with notice to move the building 100 feet away, which I refused to do, and the building is still there."

As said in *Lynn v. Thomson*, 17 S. C., 129:

"It is difficult to say distinctly what constitutes relevancy, so that a definite rule may be established by which the matter in every case may be at once determined. It must therefore be left in a great measure to the discretion of the presiding Judge, subject to the right and privilege of the party to show the relevancy of the question when objected to."

While it is clear that the admission of the irrelevant testimony of Bozeman was error, we do not think that, under the undisputed facts of the case, it did the plaintiff any harm. The testimony of the defendant, tending to establish his defense of estoppel, was undenied by the plaintiff; and the testimony of Bozeman added nothing to the conceded facts. This exception cannot be sustained.

As to the third ground of imputed error: What we have said in discussing the second ground of imputed error disposes of the exception upon which this ground of alleged error is based.

As to the fourth ground of imputed error in refusing to charge the plaintiff's third request: The plaintiff elected to go to trial on its cause of action founded upon its deed rather than on the cause founded upon its charter, and no error was committed by the Circuit Judge in refusing to charge the request of plaintiff relating to its charter.

There are several grounds of imputed error which we deem it unnecessary to discuss in detail, as they are without merit or relate to error not prejudicial to the appellant.

All exceptions are overruled, and the judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and BLEASE concur.

MR. CHIEF JUSTICE GARY (dissenting) : This is an action brought by the Southern Railway Company to remove an obstruction from its right of way near Greene Avenue in the City of Greenville. The defendant purchased the property some time after the erection of the building, and had no actual notice of the railroad's claim at the time of the purchase. The case was tried by a jury, and a verdict was returned in favor of the defendant.

The facts in the case are almost entirely admitted. In the early part of 1914, J. Harry Dean and S. C. Calder, who then owned the property, erected a small frame one-story wooden store building on their lot, the inside line of the building being approximately 51 feet from the center of the track. No objection was made by any employee or officer of the railway company, although the building was in plain view of the track. *Mr. Dean was under the impression that the right of way was only 100 feet from side to side, but said that he made no inquiry of any kind to any official of the plaintiff company.* (Italics added.) The first complaint made according to the record was shortly before the action was commenced on July 1, 1922, approximately eight years after the building was erected.

The complaint fully set forth two causes of action growing out of the encroachment—one based upon the charter rights of 1845 and the other upon a deed from B. F. Perry, et al., dated September 12, 1845, which was never recorded. The complaint prayed for the necessary relief by removal and injunction.

The defendant herein, not waiving its right to insist upon the order of election as heretofore, answering the complaint herein respectfully shows :

"(1) That paragraph 1 of the complaint is admitted.

"(2) That each and every allegation of the complaint is denied except as hereinafter admitted.

"(3) The defendant admits that it is in possession of a lot of land as described in paragraph 8 of the complaint.

"(4) The defendant alleges: That he and his predecessors for more than 70 years prior to the beginning of this action, had used without objection on the part of the plaintiff or its predecessors the property described in the complaint up to within 25 feet of the center of the roadbed of the plaintiff. That by reason of its conduct the plaintiff is thereby estopped from asserting any claim or right of ownership to the property described in the complaint as belonging to the defendant.

"(5) That the defendant has erected a permanent building upon the land as described in the complaint, with full knowledge on the part of the plaintiff of said building. That the plaintiff, by reason of its acquiescence, is thereby estopped from making any claim or demand against the defendant, and is further estopped by its conduct from prosecuting any proceeding to compel the removal of said building.

"(6) That the plaintiff has permitted practically all of its alleged right of way, which was granted to defendant by B. F. Perry and others, to be used and occupied permanently by other parties. That it is thereby estopped by its conduct from making any claim to that portion of its alleged right of way, which is now owned and occupied by the defendant.

"(7) That the plaintiff has claimed in the past a right of way on and through the property now owned by the defendant of 25 feet from the center of the track. That said right of way was and is sufficient for the use and demands of the plaintiff. That the plaintiff has not claimed more than said 25 feet, and is now estopped by its conduct from making claim to any greater width for its right of way."

Motion was made by defendant to require plaintiff to elect which cause of action it would proceed under, and election was made to join issue upon the cause of action founded upon the unrecorded deed of B. F. Perry et al.

Counsel agree upon the following propositions with reference to the trial of the case:

"(1) That the complaint be amended by making Charley Kloeckler a party defendant, he having purchased the land

since the suit was instituted with knowledge of the same, but the case is being tried as against Day, Kloeckler, the present owner, being made a party so as to clear title one way or the other.

"(2) It is agreed that plaintiff may offer in evidence without formal proof the written agreement or deed as to right of way from B. F. Perry et al., dated September 12, 1849; the instrument being admitted for what it is worth.

"(3) It is agreed that both parties claim from a common source, to wit, Vardry McBee, one of the parties who signed the right of way document September 12, 1845, and that either party may offer any deeds or record of deeds in the claim of title without formal proof.

"(4) It is understood that plaintiff under defendant's motion agrees to elect to proceed under the cause of action based upon the deed above referred to.

"(5) It is agreed that Southern Railway Company purchased on July 10, 1894, such property rights and franchises of the Columbia & Greenville Railway Company, as were capable of being conveyed under the decretal order of sale."

P. A. McDavid, a witness for the plaintiff, testified: "I am 84 years of age and remember when the Greenville & Columbia Road was completed. It was in operation about 1850 or 1851."

Cross-examination: "There was only a single track then and I do not think there has been any change."

Plaintiff next asked to offer in evidence the charter of 1845 for the Columbia & Greenville Railroad, but it was objected to by Mr. Cothran upon the ground that plaintiff was relying upon the right of way given by deed and that the charter had nothing to do with it. After considerable argument, the Court sustained the objection, holding: "I will have to sustain the objection. It strikes me that the question of estoppel is what this case hinges upon." Plaintiff rested.

Defendant moved for a nonsuit upon the following grounds:

"(1) The deed or agreement which is relied on by the plaintiff is not a deed because it is not witnessed. The most that can be said of it is that it is a permissive agreement for the Columbia & Greenville Railroad Company alone to enter into possession of this property. Now, if your Honor will refer to this paper, you will notice at a glance there on the left of the signatures that there are no witnesses.

"(2) This paper agreement to the Greenville & Columbia Railroad, the right of way we grant and release to the said Greenville & Columbia Railroad Company, the right of way of sufficient width for the tracks, cuts, and embankments of the said road, and so forth, not to exceed 100 feet on each side. Now, the proof fails to show that there was any necessity for any more than they really have. But I take it is incumbent on the plaintiff to show that, if he wants more than he already has under that deed, he must show the necessity for it."

The motion was refused.

The instrument of writing, under which the plaintiff's predecessor entered into possession of the land therein described, is as follows:

"State of South Carolina.

"Whereas, the Greenville & Columbia Railroad Company are about locating their road; and

"Whereas, its passage over the land of the undersigned may greatly benefit them:

"Therefore, know all men by these presents, that the undersigned, in consideration of the premises, have given, granted, and released, and by these presents do give, grant, and release to the said Greenville & Columbia Railroad Company, the right of way sufficient width for the track, cuts, and embankments of the said road, as also for turnouts, and all other extensions and enlargements, or repair of the

same from time to time, not to exceed 100 feet on each side, with the right to use the earth and stone within the said track, for the construction, extension, or repair of the same road.

"In witness whereof, the undersigned have subscribed their names and affixed their seals, as of and on the 12th day of September, A. D. 1849.

"Signed, sealed, and delivered in the presence of:

> "B. F. Perry.    [Seal.]
> "C. F. Townes.    [Seal.]
> "D. Hoke.    [Seal.]
> "F. F. Beattie.    [Seal.]
> "Vardry McBee.    [Seal.]
> "Wm. Jacobs.    [Seal.]
> "Adeline W. Reed.    [Seal.]
> "Richard Gantt.    [Seal.]
> "John Markly.    [Seal.]
> "James H. Payne.    [Seal.]
> "David McCullough.    [Seal.]
> "David Roberts.    [Seal.]"

The first question we will discuss is the proper construction of the said instrument of writing.

There are two ways of acquiring title to such an easement as that in question, to wit, by deed and by prescription.

The deed shows upon its face that it is defective in form. The plaintiff contends that it and its predecessors have been in the continuous possession of the land in question for the purpose of operating a railroad for about 75 years; and that the plaintiff has operated its railroad uninterruptedly and adversely to all other claimants for more than 20 years.

In *Bradley v. Jennings*, 15 Rich., 34, the distinction between the two classes of presumptions is thus stated:

"Only three months were wanting to complete the full period of 20 years from the maturity of the single bill in this case to the commencement of this suit. The want of this short term, however, prevents the application of an

arbitrary rule, just as the want of a single day would prevent the bar of the statute of limitations. Full 20 years is the time which the law, mostly from consideration of policy, has fixed as the basis for the artificial presumption, which it raises independent of belief. Time short of this, when connected with other circumstances, may create a natural presumption by producing honest belief.

" 'The lapse of 20 years is sufficient to raise the presumption of a grant from the State, of the satisfaction of a bond, mortgage, or judgment of the grant of a franchise or the payment of a legacy, or almost anything else that is necessary to quiet the title of property. \* \* \* It is said we cannot presume either a general administration or a valid will. It is hardly necessary to say that legal presumptions are not founded on actual belief. \* \* \* Presumptions must be sometimes made against the well-known truth of the fact. If 20 years have elapsed without the payment of interest or any acknowledgment of a bond, we must presume it paid, notwithstanding the fullest conviction that it never has been paid.' *Riddlehoover v. Kinard,* 1 Hill's Eq., 376, cited in *Corbett v. Fogle,* 72 S. C., 212; 51 S. E., 884; *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986; *Powers v. Smith,* 80 S. C., 110; 61 S. E., 222; *Lewis v. Pope,* 86 S. C., 285; 68 S. E., 680; *Glenn. v. Walker,* 113 S. C., 1; 100 S. E., 706."

In *Lewis v. Pope,* 86 S. C., 285; 68 S. E., 680, this Court quotes with approval the following language used by Colcock, J., who delivered the opinion of the Court in *Stockdale v. Young,* 3 Strob., 501, note:

"Presumptions may supply the place of positive proof. There are two kinds of presumptions. The one may be called a legal presumption, the other a persumption of fact. The first is wholly unconnected with the idea of belief—in fact, it is opposed to it. It is a mere rule of law to supply those defects of our nature and the nature of things, which cannot otherwise be guarded against—

under this rule the party must rely on a long-continued and uninterrupted possession. *The rule invests such possession with the title.* [Italics added.] I am never led to the consideration of this subject, but my mind involuntarily recurs to the peculiarly happy and lucid exposition of the rule by Lord Chancellor Erskine; in the case of 12 Vesey, 266, 267, he observes that it has been said, you cannot presume unless you believe. 'But it is because there are no means of creating belief or disbelief that such general presumptions are raised upon subjects of which there is no record or written muniment. Therefore, upon the weakness and infirmity of all human tribunals, judging of matters of antiquity, instead of belief (which must be the formation of the judgment upon a recent transaction), where the circumstances are incapable of forming anything like belief, *the legal presumption holds the place of particular and individual belief.* [Italics added.] Mankind, from the infirmity and necessity of their situation, must, for the preservation of their property and rights, have recourse to some general principle to take the place of individual and specific belief, which can hold only as to matters within our own time, upon which a conclusion can be formed from particular and individual knowledge.' "

The case of *Harman v. Southern Railway,* 72 S. C., 235; 51 S. E., 691, is conclusive as to the effect of possession under a defective and an unrecorded deed granting a right of way. In that case, the deed was executed in 1848 to the same company as in the present case, and using almost the same words. In the opinion, which was unanimous, the Court used the following language:

"Our construction of the deed is, that it was the intention of the grantor to convey such rights, to the full extent, as the railroad company would be presumed to have acquired, under the statute, in the absence of a written contract, between the company and the owner of the land, through which the railroad was constructed. The plaintiff cannot be re-

garded as a purchaser for valuable consideration without notice of the railroad company's right of way, because he had actual notice that the railroad was being operated through said land, at the time of his purchase, and he had constructive notice, or is presumed to have known, that the company's right of way, in the absence of a written contract, extended 100 feet on each side of the center of its track. In any event, he had knowledge of such facts as were sufficient to put him on inquiry, which, if pursued with due diligence, would have led to knowledge of the company's rights, and this is the equivalent of notice."

The foregoing authorities are to the effect that, after the plaintiff and his predecessors had operated the road openly, continuously, and undisturbed for more than 20 years, the said effective instrument of writing had the same force and effect *as if it had been drawn in proper form and had been duly recorded.*

Furthermore, the record contains this statement: "Mr. Dean was under the impression that the right of way was only 100 feet from side to side, but said that he made no inquiry of any kind to any official of the plaintiff company" —thus showing that he had *actual* notice of the fact that the plaintiff was operating its railroad, and that he was satisfied of the extent of the right of way *without making any inquiry, which, if it had been properly pursued, would have led to knowledge of the fact that the plaintiff's right of way extended* 100 *feet on each side of its track.*

Paragraph 4 of defendant's answer is as follows:

"The defendant alleges: That he and his predecessors for more than 70 years prior to the beginning of this action had used without objection on the part of the plaintiff or its predecessors the property described in the complaint up to within 25 feet of the center of the roadbed of the plaintiff. That by reason of its conduct the plaintiff is thereby estopped from asserting any claim or right of ownership

to the property described in the complaint as belonging to the defendant."

The fact that the defendant and his predecessors may have been the owners of the land *in fee* does not show that their right to the land *in fee* was paramount to the plaintiff's right of way. On the contrary, the general rule is that the right of way of the railroad company is paramount to the fee held by the grantor, as * * * "the owner of the fee has the right to the use and possession of the land covered by the right of way for any purpose *not incompatible with the purposes for which the easement was granted or acquired."* *Southern Ry. v. Beaudrot,* 63 S. C., 269; 41 S. E., 300.

To the same effect is the case of *Atlanta & Charlotte Air Line Ry. Co. v. Limestone Globe Land Co., et al.,* 109 S. C., 444; 96 S. E., 188, in which this Court uses the following language:

"According to the decisions of this Court, the owner of the fee in a railroad right of way has the right to use so much thereof as is not in the actual use and occupancy of the railroad company, provided the use be not inconsistent with the claim of right of way for the railroad purposes. It follows from this, and the rule that a right of way of a railroad, having been acquired for a public purpose, cannot be lost by prescriptive use or adverse possession unless by the erection of a *permanent structure, accompanied by notice to the railroad company of an intention to claim adversely to its right,* that, under the facts stated, at no time did the plaintiff have a cause of action against the defendants or their predecessors in title until the street in question was constructed and attempted to be used *under the assertion of a right to do so.* As the statute of limitations does not begin to *run until a cause of action has accrued,* plaintiff's action is not barred. And, for the reasons already stated, the possession and use of the right of way by defendants and their predecessors in title was not adverse,

and, therefore, their claim by adverse possession cannot be sustained." (Italics added).

The fifth paragraph of the answer is as follows:

"That the defendant has erected a permanent building upon the land as described in the complaint, with full knowledge on the part of the plaintiff of said building. That the plaintiff by reason of its acquiescence is thereby estopped from making any claim or demand against the defendant and is further estopped by its conduct from prosecuting any proceeding to compel the removal of said building."

The building in question is described as "a small frame one-story wooden store building" and was erected in 1914, and the action herein was commenced in July, 1922, approximately 8 years after the building was erected. *There was no testimony to the effect that notice was given that the party erecting the building intended to claim it as his own; nor did he give any notice whatever in regard to the building.*

The facts in this case are materially different from those in *Railroad Co. v. Cotton Mills,* 82 S. C., 24; 61 S. E., 1089, upon which the respondent's attorneys mainly rely, in which the answer of the defendant therein alleges:

"It admits that it erected certain houses and raised a pond of water in said premises situate in the City of Laurens, not far from the railroad operated by the plaintiff, but it alleges that said improvements are upon the land owned in fee by this defendant, in which this plaintiff has no interest whatever, by easement or otherwise; it further alleges that the title of said land was acquired by this defendant by purchase, and this defendant and persons under whom it claims have been in open, notorious and exclusive possession of said land for a period of more than twenty years before the commencement of this action, and that plaintiff nor its grantors has exercised any acts of ownership over the same for *10, 20, or 40 years* before the commencement of this action.

"The defendant further alleges: 'That the improvements were made in full view *and with full knowledge on the part of the plaintiff, and that plaintiff acquiesced in the erection of said improvements, and consented and assisted in the said work,* and is estopped to question the title of defendant or its rights to occupy and enjoy the said premises' * * * (Italics added).

"The defendant alleges that the right of way supposed to have been acquired by plaintiff *was abandoned and all rights thereto were lost and forfeited."* (Italics added).

The syllabus in that case, which correctly states the ruling of the Court, is as follows:

"A railroad company, *knowing that another is erecting permanent improvements on its right of way, which does not object,* is estopped from afterwards asserting its right to so much of its easement as·is occupied by such improvements. If such improvements are allowed to remain on its right of way for *10 years, being used adversely,* the company is barred by the statute from using the way so occupied."

It will be observed that the defendant and his predecessors have been in possession of the building for only about 8 years, while in the case upon which the respondent's attorneys principally rely, were in adverse possession of the property therein described for more than *10* years.

We have not deemed it necessary to consider the exceptions in detail, but they will be incorporated in the report of the case.

The judgment of this Court should be that the judgment of the Circuit Court be reversed.

When the foregoing opinion reached Mr. Justice Stabler for consideration, he filed a dissenting opinion, which requires us to set forth the following additional reasons for our conclusion:

We desire to call special attention to the following undisputed facts set out in the record:

"Mr. Dean was under the impression that the right of way was only 100 feet from side to side, but said that he made no inquiry of any kind to any official of plaintiff company.

"It is agreed that Southern Railway Company purchased on July 10, 1894, such property, rights, and franchises of the Columbia & Greenville Railway Company as were capable of being conveyed under the decretal order of sale.

"It is agreed that both parties claim from a common source, to wit, Vardry McBee, one of the parties who signed the right of way document, September 12, 1845, and that either party may offer any deeds or record of deeds in the chain of title without formal proof."

Our first proposition is that the case of *Railroad v. Cotton Mills,* 82 S. C., 24; 61 S. E., 1089; 62 S. E., 1119, is not applicable to the facts in this case. In addition to the quotation which we have already made from this case sustaining this proposition, we quote with approval the following from the argument of Mr. Tompkins, one of the attorneys for the appellants, which is as follows:

"In that case the charge of Judge Watts on the law of estoppel was upheld. That case is easily distinguished from the case at bar. There was evidence of an estoppel which was properly submitted to the jury. The defendant contended and offered proof to sustain the allegations of its owner that the railroad company had stood by and permitted the erection of thirty or forty dwelling houses, a large office building, a store building, a large pond, and other permanent improvements valued at $50,000. It was not only alleged that the railroad knew of the erection of these improvements, but that its agents actually consented and assisted in doing certain acts which were necessary to the erection of the same. It was further contended that the railroad had abandoned its right of way. Some of the houses were within 15 feet of the tracks and at least three had been erected 22 puted facts set out in the record:

opinion of Mr. Justice Woods clearly shows the main reason why the law of estoppel was applicable in that case. 'There was some evidence of estoppel by conduct of the officers of the railroad company, and taking the charge of the Circuit Judge as a whole, the law of estoppel was correctly stated.' *Railway v. Cotton Mill, supra,* 82 S. C., page 39; 61 S. E., 1096."

It will thus be seen that the defendants acquired a title by adverse possession for more than 10 years, and that the result in that case was not dependent upon the question of equitable estoppel.

Our next proposition is that the decisions in the case of *Railway Co. v. Limestone et al.,* 109 S. C., 444; 96 S. E., 188, shows conclusively that the plaintiff was not estopped by its conduct. We have already quoted at length from that case. Mr. Justice Stabler thus quotes from it also:

"According to the decisions of this Court, the owner of the fee in a railroad right of way has the right to use so much thereof as is not in the actual use and occupancy of the railroad company, provided the use be not inconsistent with the claim of right of way for the railroad purposes. It follows from this, and the rule that a right of way of a railroad, having been acquired for a public purpose, cannot be lost by prescriptive use or adverse possession unless by the erection of a *permanent structure, accompanied by notice to the railroad company of an intention to claim adversely to its right,* that, under the facts stated, at no time did the plaintiff have a cause of action against the defendants or their predecessors in title until the street in question was constructed and attempted to be used under the assertion of a right to do so."

After this quotation he thus proceeds to state the law:

"It will be observed, as held in this case, that adverse possession may run against a railroad company in favor of one claiming adversely to its easement in its right of way, when such party claiming (1) has erected upon such right of way

a *permanent* structure, and (2) *has given notice to the railroad company of an intention to claim adversely to its right.* Only from the time of such notice the statute begins to run, and the railroad company may within the period of 10 years bring action to oust the party claiming by adverse possession. But in such case the possession is knowingly hostile to the railroad company, *and the principle of equitable estoppel is not applicable."* (Italics added).

In the case of *Beck v. Railroad Co.,* 99 S. C., 310; 83 S. E., 335, Mr. Justice Watts, who delivered the opinion of the Court, used the following language:

"Both parties claim from the same source, J. Adger Smyth. The plaintiff could not have any higher right than J. Adger Smyth. The Eutawville Railroad went into possession under this agreement. Their entry was lawful, not tortious; the defendant is the successor in the interest of that road, and whatever rights it had acquired passed to the defendant. By that agreement one hundred feet was acquired from the center of the track. When the defendant' purchased years after the road was constructed she knew the road was there. The charter gives the right to acquire 75 feet from the center of the roadbed by condemnation. This agreement along with others was recorded in the office of register of mesne conveyance for Sumter County, and while not properly prepared for record so that the recording would be constructive notice to subsequent purchasers, still it was a circumstance that should have been left to the jury to say whether they were such as would put her on inquiry."

In Volume 2, § 803, of Pom., Eq. Jur., the author of that philosophical work says:

"When all the varieties of equitable estoppel are compared, it will be found, I think, that the doctrine rests upon the following general principle: When one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer a loss it must be borne by that

one of them who by his conduct, acts, or omissions has rendered the injury possible."

This language is quoted with approval in case of *Chambers v. Bookman,* 67 S. C., 432; 46 S. E., 39, which throws much light upon the questions involved in the present case.

The defendant had the right to use the plaintiff's right of way for *temporary* purposes, but he committed a *tort* when he erected a *permanent* structure thereon. It is not disputed that it was the duty of the defendant to give notice to the plaintiff of his intention to erect a *permanent* building on its right of way. If the defendant had given such notice, then the plaintiff could have protected its rights. The authorities cited both by Mr. Justice Stabler and myself show that the defendant was responsible for the litigation by his *tortious* acts.

We have heretofore shown that the plaintiff's right of way under the unrecorded deed was notice to the public just as if said deed had been properly recorded.

There was also another source of notice to the defendant, or at least of such facts as were sufficient to put him on inquiry, which, if pursued with due diligence, would have led to notice of the fact that the plaintiff's right of way extends 100 feet on each side of the railroad track. The charter of the plaintiff, which was properly recorded, shows that it is the owner and successor of the rights and franchises described in the charter of the Greenville & Columbia Railroad which was granted in 1845 and which contains the following provision:

"That, in the absence of any written contract between the said company and the owner or owners of land, through which the said railroad may be constructed, in relation to said land, it shall be presumed that the land upon which the said railroad may be constructed, together with one hundred feet on each side of the center of said road, has been granted to the said company by the owner or owners thereof, and

the said company shall have good right and title to the same (and shall have, hold and enjoy the same) unto them and their successors, so long as the same may be used only for the purposes of the said road and no longer. * * *"

For the foregoing reasons I dissent.