## 7614

### LEWIS v. POPE.

1. CHARGE—ADVERSE POSSESSION.—A REQUEST stating what acts constitute adverse possession is on the facts.
2. ADVERSE POSSESSION may be asserted by pasturing lands, cutting wood, fencing, and various acts consistent with the use to which the land may be put and the situation of the property admits of without actual residence or occupancy.
3. A PRESUMPTION of a deed arises in twenty years even where there is no proof that a deed ever existed, and twenty years' possession of land by different persons at different times is sufficient to raise the presumption of a grant.

4. CHARGE—DECLARATIONS.—Request to charge that loose declarations
   of a party in possession cannot prevail against the truth of the case
   as ascertained and proven on the trial is on the facts.

5. ADVERSE POSSESSION.—The instruction, "holding exclusively and
   adversely and openly are such matters as you may take into con-
   sideration in ascertaining and passing upon the question as to
   whether the holding was adverse," when considered in connection
   with other parts of the charge, is free from error.

Before DEVORE, J., Spartanburg, November Term, 1909.
Affirmed.

Action by R. H. Lewis and John Parish against N. B.
Pope, D. M. Laughter *et al.* From judgment for defend-
ants, plaintiffs appeal on the following exceptions:

1. "Because his Honor, as it is respectfully submitted,
erred in refusing to charge the plaintiffs' sixth request, to
wit: 'A person cannot live on or occupy one tract of land
and establish adverse possession under color of title over an
adjoining tract of land by proving that he has cut wood or
timber on such adjoining tract and hauled it off for use on
the tract on which he lived.' The error being, as it is
respectfully submitted, that this request was a sound prop-
osition of law applicable to the testimony introduced.
There being testimony tending to show that the ancestor
of the defendants through whom they claimed lived on
another tract of land, separate and distinct from the tract
in dispute, and that his acts of ownership, or of adverse
possession, were going on the land in dispute at separate and
distinct times and cutting wood and timber on the same, not
for use on the tract in dispute, but for use on the separate
and distinct tract, and that by refusing this request
his Honor refused to submit to the jury one of the ques-
tions of fact in this case, to wit: whether or not the acts of
defendants' ancestors in going on the land in dispute and
cutting wood and timber was sufficient to establish a title by
adverse possession to the same.

2. "Because his Honor erred in refusing to charge plaintiffs' thirteenth request, to wit: 'When a person claims that he has acquired title to land by being in possession for twenty years, he must prove such possession of such land for twenty consecutive years. The mere going on the land while living on another tract, and cultivating a part of such land for a few years, or occasionally cutting wood on it, is not such possession from which it can be presumed that he had a deed. In all cases the jury must find the truth from the evidence, and if, as a matter of fact, he had no deed, then they cannot presume that he had such deed.' The error being, as it is respectfully submitted, that this was a sound proposition of law applicable to the testimony in this case, and as a matter of law, under the facts the plaintiffs were entitled to have the jury so instructed. By refusing this request his Honor took from the jury, or rather failed to submit to the jury, one of the material issues in the case. It being respectfully submitted that where one is living on one tract, the mere going upon another tract, to which he has no paper title, and cultivating a part of it for a few years, or occasionally cutting wood on the same, is not such possession as, under the law, would presume a deed, and it was error on the part of his Honor to fail to so instruct the jury when requested. It is further respectfully submitted that his Honor should have instructed the jury, as requested, that if the evidence shows, as matter of fact, that one has no deed, then the mere fact that one has been in possession of land for twenty years is not sufficient to presume a deed against evidence showing the contrary, and his Honor erred in refusing to so instruct the jury when requested to do so.

3. "Because his Honor erred in refusing to charge all of the eighth request of the plaintiffs, to wit: 'Where one establishes a legal title to land, the law presumes that he has been in possession of the same within the time fixed by the statute, and such title cannot be defeated by an occupant

of such land unless he proves adverse possession in one or the other of the ways which have been explained to you, and even though it does appear that the occupant has been in possession of the same for twenty years, this will not presume a deed from the owner of such land, but before such occupant can defeat the legal title he must establish his adverse possession either under color of title or by actual possession for ten consecutive years.' It being respectfully submitted that this request embodied a sound proposition of law applicable to the testimony in this case, and his Honor, as it is respectfully submitted, erred in not charging the entire request. It is further respectfully submitted that his Honor erred in modifying this request by refusing to charge a part of it; the law being that where one establishes a legal title the presumption is that such person has been in possession within the time fixed by the statute, and that when the legal title has been proven in any one then that the mere proof of occupancy of such land by another is presumed to be in subordination to the legal title, and his Honor, by modifying this request, failed to properly instruct the jury on this phase of the case.

4. "Because his Honor erred in refusing to charge plaintiffs' eleventh request, to wit: 'While the declarations of a person who has been in possession of land may be given in evidence to show under what right he held it, yet, I charge you that the loose declarations of a man in possession cannot prevail against the truth of the case as may be ascertained and proved on the trial of such case.' The error being, as it is respectfully submitted, that the evidence showing that neither the defendants, nor those through whom they claimed, had any deed to this land, and as there was evidence of declarations of the ancestor of the defendants, as to how he held this land, and the plaintiffs having proven title to the same, they were as matter of law, entitled to have the jury instructed as requested, and that his Honor, by refusing this request, permitted the jury

to find that the declarations of the ancestor of the defendants was sufficient to vest title in themselves against evidence which otherwise might have been sufficient to have convinced the jury that the defendants were wrongfully in possession of the land, and had no title to the same.

5. "Because his Honor erred in charging the fourth request of the defendants, to wit: 'The law presumes possession unexplained to be adverse possession. Holding exclusively and adversely and openly are the highest acts in the power of the disseizer to indicate his intention. Those who claim an interest in things must be charged with a knowledge of their status and condition.' The errors being, as it is respectfully submitted: (a) Because under the law where one has proven a perfect title to land, the law presumes that such person has been in possession of the land within the time fixed by the statute, and that any person on such land is there in subordination to the true title, and that his Honor, in charging that the law presumes unexplained possession to be adverse possession, reversed the rule and placed upon the holder of the true or legal title the burden of showing that the possession was not adverse; whereas, it is respectfully submitted, that the burden is upon the one setting up the adverse possession of proving to the satisfaction of the jury the title under such claim. (b) Because, by this charge, his Honor charged upon the facts of the case and instructed the jury as matter of fact that where a person claims an interest in anything, he is charged with a knowledge of its status and condition. Whereas, it is respectfully submitted, that it was for the jury to say, under the testimony in this case, whether or not plaintiffs, or any of those through whom they claimed, did have knowledge of the fact that the defendants were claiming this land adversely."

*Messrs. Sanders & DePass,* for appellants, cite: *Adverse possession:* 6 Rich., 67; 1 McM., 354; Code of Proc., 101;

2 Rich., 629 ; 2 N. & McC., 343, 534 ; 8 Rich., 42 ; 10 Rich., 433 ; 1 Strob., 145. *Twenty years' possession must be consecutive:* Dud., 177 ; 2 Rich., 629 ; 1 McC., 354.

*Messrs. J. B. Atkinson* and *Wilson & Osborne,* contra, cite: *Presumptions:* 80 S. C., 110. *Declarations of one in possession:* 48 S. C., 485 ; 53 S. C., 31. *Adverse holding:* 48 S. C., 293.

July 13, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to recover possession of a tract of land containing about one hundred acres. The defendants denied the plaintiffs' title, and set up the defenses of adverse possession, presumption of a grant, estoppel and laches. The jury rendered a verdict in favor of the defendants, and the plaintiffs appealed upon exceptions which will be reported.

*First Exception.* In order to understand clearly the question presented by this exception, it will be necessary to refer to the testimony of the defendant's witnesses, which is thus summarized by the respondents' attorneys:

"In 1869 T. W. Pope—ancestor of defendants—was in possession. His son, N. K. Pope, says he continued in possession till he, N. K. Pope, went west, 1871. The fenced-in portion, some 11 acres, he cultivated, and in winter pastured; the rest of the place, woodland, he used for firewood and cattle range.

"N. B. Pope says: He worked in this cultivated, fenced land for his father in 1871. The cattle were pastured there in winter. This continued till 1876, when the family scattered by deaths and marriages, leaving no one but himself with his father. They thereupon discontinued cultivating, and devoted the place to pasture till three years after the fence law was enacted, about 1884, and then hauled off

the rails and built a fence for the cattle, and let that farm grow up. The tract was used in the only other ways possible: clearing land by cutting timber and selling it off for wood, sawing and using it for firewood and shingles. This continued until his father's death in 1900. From the time his father went on the place till his death, he used it as his own, just like his other land, claiming it as his own, and no one interfered with his possession. After his death his children continued to use and occupy it, building houses upon it in 1901 and 1903. In 1904 it was divided amongst them by partition, and has since then been occupied and cultivated by those of the family to whom it was set off. During all the while—for thirty years—the plaintiff, Lewis, lived in that neighborhood.

"J. D. Cooley says: That his first recollection was T. W. Pope cultivating some eight or ten acres of the place, and getting wood and pine off it for his own use. He made no difference in the use of this land and his other lands. In 1876 witness helped pile up fodder and put it in an old house there, along with T. W. Pope's children.

"Simon Moore says: That in 1888 he cut down saw timber on the place for T. W. Pope, and sawed there for four or five months, about 200,000 feet.

"G. B. Morris says: That he was on the place in 1873, and T. W. Pope was then in possession, and he so continued till his death; using it just like he did his other lands, and claiming it as his own; and after his death his heirs took charge of it, but did not divide it up under the surveyor's advice, because they could not find among his papers a deed to the place. From 1873 to this time the land has not been in possession of any one but T. W. Pope and his heirs.

"Mrs. Laura Nance says: That from her earliest recollection her father, T. W. Pope, was in possession of the land, cultivating and pasturing it, and the men bringing in firewood. She left and went west in 1880, returning in

1896, finding him still in possession. Never heard of any one else claiming the land.

"T. E. Johnson, suveyor, says: That in 1900, after T. W. Pope's death, he surveyed his lands and platted them for his heirs as shown by Exhibit 'I.' In doing so he made use of a plat made by J. B. Davis, surveyor, in 1879, for T. W. Pope of his lands, introduced as Exhibit 'J.' This plat 'J' includes the land in dispute. In T. W. Pope's lifetime, Wm. Ramsay got him to survey a tract which lies just east of the tract in dispute, and he, witness, had to locate the line dividing them. In doing so, he got T. W. Pope to help him. Pope told him that was his line and Ramsay's. This was the eastern line of the land in dispute.

"N. B. Pope says: That when Davis made the survey and plat, Exhibit 'J,' for his father, he and his father went along and his father showed Davis the lines by which the survey was made."

There are two reasons why this exception can not be sustained. In the first place, the request was in violation of art. V, sec. 26, of the Constitution, which provides that "Judges shall not charge juries in respect to matters of fact," in that it undertakes to say, as matter of law, that certain facts do not constitute adverse possession; whereas, the inference from such testimony presents a question of fact to be determined by the jury. 16 Enc. of Law (1st Ed.), 465 *et seq.; Whaley* v. *Stevens,* 27 S. C., 449, 4 S. E., 145 ; *State* v. *Aughtry,* 49 S. C., 305, 26 S. E., 619 ; *Pickens* v. *Ry.,* 54 S. C., 498, 32 S. E., 567 ; *Rinake* v. *Mfg. Co.,* 58 S. C., 179, 36 S. E., 700, 46 L. R. A., 517 ; *Wood* v. *Mfg. Co.,* 66 S. C., 482 ; *Weaver* v. *Ry.,* 76 S. C., 49, 56 S. E., 657 ; *Turbyfill* v. *Ry.,* 83 S. C., 325.

The case of *Pickens* v. *Ry., supra,* shows that this principle is specially applicable to the case under consideration, as there was testimony, other than that mentioned in the exception, touching the question of adverse possession.

In the second place, actual residence is not essential to the defense of adverse possession. "Adverse possession, as applied to real estate, is an actual, visible and exclusive appropriation of land commenced and continued under a claim of right, with the intent to. assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party, as to give him a cause of action." 1 Enc. of Law, 789; 2 Enc. L. & P., 362.

"The usual test of entry and possession are actual occupation and residence, cultivation and improvement of the land. The evidence necessary to establish actual adverse possession varies in each particular case, depending upon the situation of the property, and the use to which it may be applied. The same rule will not apply equally to cultivated lands, town property and wild lands. Although there must be actual entry, neither actual occupation, cultivation nor residence is necessary, where the property is so situated, as not to admit of any permanent improvement or cultivation; but where acts of ownership have been done upon lands, which, from their nature, indicate a continuous claim of property, and are continued long enough, such acts are evidence of an adverse possession for the consideration of the jury." 1 Enc. of Law, 822-823.

"The actual fencing and enclosing of the land are not, unless expressly required by statute, essential to constitute adverse possession, but such acts are very decisive in determining possession and claim of ownership. Where the property has been properly enclosed there may be sufficient evidence of claim and ownership without actual residence." 1 Enc. of Law, 828-829; 2 Enc. L., p. 369-371.

"Although *possessio pedis* does not require actual occupancy, it implies enclosure and use of the ground enclosed. I will not undertake to indicate in what way it should be used. In general it should be cultivated, or perhaps it might be sufficient that it should be used for pasture." Per

Butler, J., in delivering the opinion of the Court in *Porter v. Kennedy,* 1 McC., 354. But even if there was error it was rendered harmless by charging the following request: "Before one can succeed in holding lands under a claim of adverse possession, he must prove that he has been in possession for ten consecutive years, claiming it openly, notoriously and adversely. He cannot succeed in such claim by living on another tract and cultivating for a few years a small patch on the tract he claims, or by going on such tract and sometimes cutting wood or timber, and hauling it off for use on the tract on which he lives, but he must show that he has been doing that for ten consecutive years."

*Second Exception.* The proposition contained in the first sentence of the request is disposed of by what was said in considering the first exception. The proposition embodied in the second sentence of the request is antagonistic to the doctrine upon which presumptions rest, to wit: that even when there is no proof of a fact, nevertheless, after twenty years it will be presumed to exist. *Ridlehoover* v. *Kinard,* 1 Hill's Ch., 376; *McLeod* v. *Rogers,* 2 Rich., 19; *Corbett* v. *Fogle,* 72 S. C., 312, 51 S. E., 884; *Powers* v. *Smith,* 80 S. C., 110, 61 S. E., 222.

"Presumptions may supply the place of positive proof. There are two kinds of presumptions. The one may be called a legal presumption, the other a presumption of fact. The first is wholly unconnected with the idea of belief—in fact, it is opposed to it. It is a mere rule of law to supply those defects of our nature and the nature of things, which cannot otherwise be guarded against—under this rule the party must rely on a long-continued and uninterrupted possession. The rule invests such possession with the title. I am never led to the consideration of this subject, but my mind involuntarily recurs to the peculiarly happy and lucid exposition of the rule by Lord Chancellor Erskine; in the case of 12 Vesey, 266-7, he observes, that it has been said, you cannot presume unless you believe.

'But it is because there are no means of creating belief or disbelief that such general presumptions are raised upon subjects of which there is no record or written muniment. Therefore, upon the weakness and infirmity of all human tribunals, judging of matters of antiquity, instead of belief (which must be the formation of the judgment upon a recent transaction), where the circumstances are incapable of forming anything like belief, the legal presumption holds the place of particular and individual belief. Mankind, from the infirmity and necessity of their situation, must, for the preservation of their property and rights, have recourse to some general principle to take the place of individual and specific belief, which can hold only as to matters within our own time, upon which a conclusion can be formed from particular and individual knowledge.' The second is the rule in relation to the presumption of facts; where the party undertakes to show that in point of fact, a deed did exist, there he must first prove such circumstances as will evidence the belief of its existence—next the loss or destruction, and lastly the contents." Per Colcock, J., in delivering the opinion of the Court in *Stockdale* v. *Young,* 3 Strob., 501. The second kind of presumption is not involved in this case.

*Third Exception.* The Circuit Judge charged the request down to the words "which have been explained to you." The second portion of the request would, however, deprive the defendants of the right to rely upon the presumption of a grant, unless they first showed that they had acquired title to the land by adverse possession for the statutory period of ten years. In order to sustain the defense of adverse possession under the statute, the defendant is not allowed to tack his possession to that of the party from whom he claims. *Pegues* v. *Warley,* 14 S. C., 180; *Ellen* v. *Ellen,* 16 S. C., 132; *Garrett* v. *Weinberg,* 48 S. C., 28, 26 S. E., 3.

It was, however, held in the case of *McLeod* v. *Rogers,* 2 Rich., 19, that a continuous adverse possession of land

for twenty years by different persons and at different times, is sufficient to raise the presumption of a grant. It will thus be seen that it would have been prejudicial to the rights of the defendants to charge the request.

*Fourth Exception.* When the request was presented the presiding Judge said: "I refuse that eleventh request as it stands, but I will cover it in my general charge before I get through, in a different way." The appellants have not shown wherein the general charge in this respect was prejudical to their rights, but waiving such objection, the exception can not be sustained, as the request was in violation of art. V, sec. 26, of the Constitution, which provides that "Judges shall not charge juries in respect to matters of fact."

*Fifth Excepton.* In disposing of the request set out in this exception, the presiding Judge said: "I will have to charge that request. Holding exclusively and adversely and openly are such matters as you may take into consideration, in ascertaining and passing upon the question, as to whether the holding was adverse." When the question presented by this exception is considered in connection with other portions of the charge, especially what was said in charging the plaintiff's first request, it will be seen that it is free from error. The first request and the remarks of the presiding Judge are as follows: "If a plaintiff, in an action to recover real property, or the possession thereof, establishes a legal title to the land in dispute, then he is presumed to have been in possession thereof within the time required by law, and when such is the case, the occupaton of the land by any other person is deemed to have been under and in subordination to the legal title, and before such legal title can be defeated the person in possession must show that he has held and possessed the land adversely against such legal title for ten consecutive years before the commencement of the action. I charge you as I have already done in sum and substance.

Whenever a person comes into Court, and shows that he has the legal title, or has had it, the law presumes that he is in possession, or that if any one else is in possession, the law presumes that he is there by permission of the owner, the person who owns the legal title to the land. The person in possession claims as a subordinate, but that presumption may be rebutted by evidence. That is the case here, and it is for you to say, whether that presumption has been rebutted by the evidence."

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *concurs in the result.*

MR. JUSTICE HYDRICK *did not sit in this case.*