10492

DILLON COUNTY v. LANE *ET AL.*

(104 S. E. 184.)

1. APPEAL AND ERROR—FINDINGS OF COURT NOT REVIEWED, UNLESS EVIDENCE OPEN TO BUT ONE INFERENCE.—In an action at law, though tried by the Court, the appellate Court cannot review the evidence, unless it was susceptible to but one inference, or unless the decision

of the questions of fact was influenced or controlled by an error of law.

2. SHERIFFS AND CONSTABLES—EVIDENCE HELD TO WARRANT FINDING THAT SHERIFF KNEW AUDITOR WAS ACTING IN HIS BEHALF.—In an action by a county against a sheriff for negligently failing to collect and turn over to the county treasurer amounts due on tax executions, evidence *held* to warrant a finding that the sheriff had knowledge that the county auditor was purporting to act in his behalf so as to become responsible for the auditor's defalcation.

3. SHERIFF AND CONSTABLES—SHERIFF NOT RESPONSIBLE FOR TAX COLLECTED BY COUNTY AUDITOR BEFORE EXECUTION ISSUED.—Under Civ. Code 1912, sec. 454, fixing the time for payment of taxes, and sections 476, 1196 and 1198, regulating the issuance of tax executions by the treasurer to the sheriff for collection, the sheriff is not responsible for taxes collected by the county auditor, who forged his name to receipts, where the collections were made before the time fixed for issuance of tax executions; for though the sheriff authorized the auditor to assist him, he could not authorize collection of taxes before the time fixed for issuance of tax executions to himself.

Before MOORE, J., Dillon, Spring term, 1920. Modified.

Action by Dillon County against S. V. Lane and Gulf & Atlantic Insurance Company on official bonds. From judgment for plaintiff, the defendants appeal.

*Messrs. Joe P. Lane* and *J. Fraser Lyon,* for appellants, cite: *No contract between Lane and Bruce:* 113 S. C. 352. *Requirement as to collection of executions (sec. 476, 1 Civil Code 1912) should be construed in connection with secs. 1196, 1197, 1198, 1199, Id. Appointment of deputy sheriff:* Secs. 1146-7-8, 1 Civ. Code 1912. *Sheriff not liable for forgery of name by his deputy:* 75 S. C. 252; *nor for an execution which does not come into his hands:* 4 McC. 162; *nor for acts of deputy outside scope of his authority:* 22 R. C. L. 587, par. 33. *Tax executions made out by treasurer:* Sec. 469, 1 Civ. Code 1912. *Presumption that acts done in sheriff's office will be presumed to have been done by his authority may be rebutted:* 1 McC. *53. *No similarity between this case and 92 S. C. 336.*

*Messrs. Willcox & Willcox, Henry E. Davis* and *W. C. Moore,* for respondent, cite: *Findings of fact in a law case tried by the Judge by consent not reviewable:* 44 S. C. 299; 45 S. C. 494; 67 S. C. 35; 89 S. C. 555; 104 S. C. 399. *Judgments on official bonds for defalcation include interest from time of defalcation:* 29 Cyc. 1471. *Complaint for breach of bond should give notice to defendant what particular duty has not been performed:* 33 S. C. 562; 51 S. C. 437; 3 Enc. P. & P. 657; 15 *Id.* 135, *et seq.;* 9 Cyc. 826; 9 C. J. 102. *Duties of sheriff in regard to executions:* Secs. 1196, 471, 476, 1198, 1 Civ. Code 1912. *Only necessary to show totals of debits and credits, and not the regularity of executions:* 89 S. C. 224. *Only necessary to allege ultimate facts:* 92 S. C. 418.

October 11, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action on the bond of the defendant, Lane, as sheriff of Dillon county, for negligently failing to collect and turn over to the county treasurer the amounts due on certain tax executions, alleged to have been placed in his hands for collection, on April 20, 1915, for delinquent taxes of the previous year.

Defendants, the sheriff and his surety, denied liability, on the ground that the executions have never been delivered to the sheriff. They contended that the receipt for them held by the treasurer, which was put in evidence, was a forgery, committed by C. G. Bruce, the county auditor, who conspired with W. McInnes, the county treasurer, to defraud the county, and put the responsibility on the sheriff.

The defendant, Lane, is now and has been sheriff of the county since its organization, in 1910, having been elected in that year, and re-elected at the general elections in 1912 and 1916. His last election was after the defalcation herein

sued for had been discovered.   Some time in August, 1915, he discovered that Bruce had been collecting taxes and embezzling the money by the aid and connivance of the treasurer, and he promptly reported the matter to the grand jury.   An investigation of the county offices was made by expert accountants, who reported a shortage in the sheriff's office of $1,405.97, as the result of Bruce's embezzlement. Bruce and McInnes were indicted.   Bruce was convicted and sentenced to the penitentiary.   The indictment against McInnes is still pending.

By consent this case was heard by the Court without a jury.   The Court acquitted Lane of any intentional or moral wrongdoing, but, upon consideration of all the facts and circumstances, found that he was negligent in respect to the management of his office, and that he had put it in the power of Bruce to embezzle the money by employing him to collect it, and for these reasons he was held responsible for the shortage; and judgment was given against him for the full amount which Bruce had embezzled, and which had not been made good to the county.

The respondent insists that this is an action at law, in which this Court has no jurisdiction to review the facts. That is true, unless the evidence is susceptible of but one inference, or unless the decision of questions of fact was influenced or controlled by error of law.   These principles have been decided so often that citation of the cases is deemed unnecessary.   Appellants contend that this case is within both the exceptions to the general rule above stated, and, therefore, we have given the testimony and its tendencies careful consideration.

By section 454 of the Civil Code, the time for the payment of taxes to the county treasurer, without penalty, expires on December 31 in each year.   After that time a penalty of 1 per cent. is added for the month of January, an additional 1 per cent. for the month of February, and an additional 5 per cent. after the 1st of March;

and if the taxes and penalties are not paid to the treasurer
by the 15th of March, he is required to issue his execution
therefor directed to the sheriff.    By special act, the time was
extended in 1915 to the 1st of April.    The form of the exe-
cution, the returns thereon to be made by the sheriff, and the
receipt which the sheriff is required to give the delinquent
taxpayer, are minutely prescribed.    Section 1196 provides
that, whenever the sheriff shall receive tax executions from
the treasurer he shall give the treasurer an itemized receipt
therefor, and shall enter such executions separately upon the
execution book in his office; and sections 476 and 1198 made
it his duty to make returns to the treasurer of all tax execu-
tions within 90 days after the date of the issue thereof.

The sheriff testified that, in January or February, 1915,
Bruce approached him and asked to be employed to help
him collect the tax executions of that year, saying that, as
he was county auditor, he was familiar with the business,
and could be of considerable assistance to him.    He says:

I told him, when the executions were made out and turned
over to me, I would let him help me; that I would go out and
send them in, and would give him my dollar (the sheriff
gets $1 on each execution) if he helped me, after the execu-
tions were made out and turned over to me.    It had been
customary for the executions to be turned over to me about
the 1st of June each year, but I never started to collect taxes
until about the 1st of September each year, as there was no
money in the country before that time.    In August, that
year, I had a vacation.    (He says elsewhere that he was
absent during the month of July, and returned about August
10th.)    When I came back, it was time to commence col-
lecting taxes, and I got after it to see what had been done.
I found that I had men's names on my books, and, when I
went to them, they had paid their taxes and had my receipts;
that is, receipts signed "S. V. Lane, Sheriff, per C. G. Bruce."
I went to Mr. Bruce about it, and stopped him from having
anything more to do with the collecting of taxes.    Then I

found what he had done.   It was in June before I got the
executions at all.   I had no execution in my possession
until about the 1st of June.   I had not receipted the treas-
urer for them.   I had not received them from the treasurer
until about the 1st of June.   I did not authorize Bruce to
give my receipt to the treasurer for the executions.   I had
no agreement with him that he should help me in that way.
He was to help me the next fall.   I stated I made my trade
(with Bruce) in January.

He then explains the trade as heretofore stated, and said
also that he had employed Bruce in a previous year to collect
the tax executions in one part of the county.

While defendant denied that Bruce had authority to sign
his name to the receipt to the treasurer for the executions,
it does not appear that when he found the executions in his
office he made any question as to how they got there, or as
to who had receipted the treasurer for them.   He says they
came into his office about the 1st of June.   He was there
during the whole of that month.   How did they get there?
He knew that the treasurer could not lawfully turn them
over to him without his receipt.   He had receipted for them
in each of the four previous years.   He must have known,
therefore, when he found them in his office, about June 1st,
that some one had assumed authority to receipt the treasurer
for them in his name; otherwise, they could not have been
lawfully in his office.   So far as the testimony shows, he
made no inquiry as to who had assumed to exercise that
authority, nor did he question the exercise of it at that time.
While there is no direct testimony that Bruce had access to
the sheriff's office, that fact is inferable from all the circum-
stances, otherwise, how could he have entered the executions
in that office?   That they had been so entered with the
knowledge of the sheriff is inferable from the fact that he
thought some steps might have been taken toward collecting
them, for he says that, on his return, he "got after it to see
what had been done."   We mention these salient facts and

circumstances merely to show that the testimony was susceptible of the inferences drawn from it by the Circuit Court, and, therefore, we are without jurisdiction to review the findings.

But the Court erred, as matter of law, in holding the sheriff responsible for taxes collected by Bruce before the tax executions were issued, and for taxes collected by him for which no executions were issued at all. Under the law, the sheriff has nothing to do with the collection of taxes, until executions have been issued and delivered to him. Therefore it cannot be said that he authorized Bruce, or put it in his power, to collect taxes for him when he had no authority himself to collect them. In *Chiles v. Holloway,* 4 McCord 164, it was held that a sheriff was not liable for money received by his deputy in a case in which execution had not been lodged in his office.

The record (Ex. 1) shows that $543.74 of the total shortage for which the sheriff was held liable was collected by Bruce either before the executions were issued, or in cases in which no executions were issued at all. Some of these items were collected in March, before the treasurer could lawfully have issued any executions at all; and in many of the cases the checks given in payment of these items were payable to the order of the treasurer, who indorsed them to Bruce, although the receipts were given in the name of the sheriff, per Bruce, but on blanks which Bruce obtained from his own or the treasurer's office. On the principle above stated, the sheriff is not liable for any of these items, but the aggregate of which, as above stated, must be deducted from the judgment against him, which is so modified.