13249

WESTON v. MORGAN *ET AL.*

(160 S. E., 436)

178

See, also, *Powell v. Pearlstine,* 43 S. C., 403, 21 S. E., 328.

192

*Messrs. B. F. Martin* and *Jesse W. Boyd,* for J. E. Morgan, appellant,

*Messrs. J. B. Jester, Blythe & Bonham* and *Lyles, Daniels & Drummond,* for appellants, J. J. Gentry et al., as Commissioners of Public Works, and B. W. Montgomery,

*Messrs. Mann & Plyler* and *Dean, Cothran & Wyche,* for respondent,

September 29, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This cause was first heard in this Court at the October, 1929, term. The judgment of the lower Court was affirmed, the opinion being rendered by the late Mr. Chief Justice Watts.

The appellants, in a very strong petition for rehearing, so earnestly insisted that the judgment of this Court was erroneous, that the Court, with the desire to decide the case justly under the law, granted the petition. The case was accordingly reargued at the June, 1930, term.

We have given the record in the case long and careful study. We cannot get away from the conclusion that the case is one at law. Under the provisions of

the Constitution, we cannot reverse the findings of fact of a Circuit Judge in a case at law if he had before him any evidence whatever to support his findings. There was evidence to support the findings of Judge Mauldin, and we cannot reverse the judgment he rendered.

We approve and adopt the opinion of the late distinguished Chief Justice as the opinion of this Court, which was as follows:

"Mr. Chief Justice Watts: An action was commenced by the plaintiff against the defendants in the Court of Common Pleas for Greenville County in November, 1926, for the partition of two tracts of land, one containing 292 acres and being situate wholly in Greenville County, the other containing 147 acres and being situate wholly in Spartanburg County. These lands were contiguous, the 292 acres in Greenville County being known as the Earle lands and passed from a conveyance recorded in Greenville County in Book TT, at page 141; the 147 acres in Spartanburg County being known as the McMakin lands and being described in a deed recorded in Spartanburg County in Book 4-B, at page 689.

"While only one action is brought, there are in fact two separate titles and two separate sets of claimants so far as defendants are concerned. Most of the Greenville County lands are claimed by the defendant J. E. Morgan, and most of the Spartanburg County lands are claimed by the defendants J. J. Gentry and B. W. Montgomery. The remaining portion of the Greenville County lands were claimed by some of the defendants, but they have not appealed, and part of the Spartanburg County lands were claimed by the defendant, J. E. Henderson, and the plaintiff admitted that he had established good title, and hence this appeal does not involve the portion claimed by him.

"The defendants filed separate answers asserting title in themselves. The defendant Gentry acquired his title from the Master in a foreclosure, the deed to him being executed June 6, 1916, which was a foreclosure against W. G. Weston

of a mortgage made by him to J. C. Wall, the mortgage being dated March 8, 1910, and covering the entire 147 acres of land. The defendant Morgan acquired his title by deed from J. W. Norwood, November 1, 1919; Norwood having bought at Master's sale in 1913, which sale was in foreclosure of a mortgage made by W. G. Weston to B. M. Shuman, attorney, April 3, 1911. The Norwood title covers 203 acres; Morgan acquired the balance of the tract by deed from R. J. McClure, dated March 9, 1919, McClure having acquired title deed from W. G. Weston, dated July 2, 1908, and recorded January 18, 1912. All these deeds and mortgages purported to convey the entire title to the lands described herein in fee-simple, with general warranty clauses.

"W. T. Weston died intestate in July, 1898, leaving as his sole heirs at law his widow and three children. His widow died intestate in 1899, leaving as her heirs at law three children, and one of the children, a daughter, died intestate in 1915, leaving as her heirs at law her two brothers, R. F. Weston and W. G. Weston. Plaintiff seeks recovery of an undivided one-half interest in these lands by inheritance from his father, mother, and sister.

"The case was by a consent general order of reference referred to the Master of Greenville County, who after holding numerous references filed his report on April 7, 1928, finding that the defendants were the owners in fee of both the Greenville and the Spartanburg lands; that plaintiff had no interest therein and recommended that the complaint be dismissed with costs.

"To this report plaintiff filed exceptions, and on August 2, 1928, the Circuit Judge filed his decree overruling the Master's report and finding that the plaintiff is the owner of a one-half interest in the lands described in the complaint and is entitled to partition of the said lands. In due time notice of appeal was served and exceptions taken.

"Judge Mauldin's decree states the facts and will be reported.

"The suit was for partition, but the appellants and respondents each claimed title in themselves and agreed to refer the case to the Master. On coming in of his report the Circuit Judge heard the case, neither side asked for a jury. His Honor committed no error when he tried the title for the suit resolved itself into a trial of title. This Court has repeatedly held in a law case that we will not disturb a finding of fact by a Circuit Judge if there is any testimony to sustain it.

"The constitutional provision, Article 5, § 4, Constitution 1895, is as follows: 'The Supreme Court .shall have power to issue writs or orders of injunction, mandamus, *quo warranto,* prohibition, *certiorari, habeas corpus* and other original and remedial writs. And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law, except in chancery cases where the facts are settled by a jury and the verdict not set aside, and shall constitute a Court for the correction of errors at law under such regulations as the General Assembly may by law prescribe.'

"In the case of *Metze v. Charlotte, Columbia & Augusta R. R. Co.,* 23 S. C., 1, 24, the Supreme Court of our state lays down unqualifiedly the rule that where a law case has been passed on by a trial Judge, the Supreme Court will not review the facts. The Supreme Court bases its holding on the constitutional provision relating to its powers in law cases. The Court has the following to say: 'If the jurisdiction of the Supreme Court in appeals was defined only in the sections of the code which we have cited, unaffected by the provisions of the Constitution, as is the case with reference to the jurisdiction of the Circuit Court to review the report of a referee, then such jurisdiction would not be limited to the correction of errors of law only, but would extend to the correction of errors of fact also by the express terms of those sections; but as the Constitution, which is of superior authority, does place such a limitation upon

the jurisdiction of the Supreme Court, the comprehensive language of those sections, when applied to the Supreme Court, must necessarily be narrowed down to the limits fixed by such superior authority.'

" 'A finding of fact by a Circuit Judge concerning an occurrence in his presence will not be disturbed on appeal.' *Younger v. Massey,* 41 S. C., 50, 19 S. E., 125.

" 'Findings of fact by the Court without a jury are not subject to exception or review.' *Peeples v. Cummings,* 45 S. C., 107, 22 S. E., 730; *Holtzclaw v. Green,* 45 S. C., 494, 23 S. E., 515.

" 'An action to recover possession of a tract of land being an action at law, and the issue of title having been submitted to the Court without a jury, questions of fact must be accepted as finally settled, since the Supreme Court has no jurisdiction to review issues of fact in a law case.' *Gunter v. Fallaw,* 78 S. C., 457, 59 S. E., 70.

"The foregoing case is very similar to the case at bar. The issue of title was submitted to the trial Court without a jury and the Supreme Court refused to review the findings on the facts.

" 'On appeal from the Probate Court to the Circuit Court on probate of a will, the cause must be regarded as a law case, the issue of will or no will, both as to real and personal property, being legal in its nature, and the Circuit Court's findings of fact are not reviewable by the Supreme Court.' *Thames v. Rouse,* 82 S. C., 40, 62 S. E., 254.

"In the case of *Vlasservitch v. Railway Co.,* 85 S. C., 296, 67 S. E., 306, the Circuit Judge modified the appeal from the Magistrate's Court and made certain findings on facts. On the appeal to the Supreme Court this Court stated at page 296 of 85 S. C., 67 S. E., 306, 308:

" 'This is an action at law, and this Court has not the power to review the facts, except for the purpose of determining whether there is any testimony whatever to sustain

the findings of the Circuit Judge. *Jenkins v. Ry.,* 73 S. C., 289, 53 S. E., 480, 481.

" 'If, therefore, the facts in this case are susceptible of more than one inference, the conclusion of the Circuit Judge necessarily involves the finding of such facts in favor of the plaintiff, and they cannot be reviewed.'

" 'In an action at law, though tried by the Court, the appellate Court cannot review the evidence, unless it was susceptible of but one inference, or unless the decision of questions of fact was influenced or controlled by an error of law.' *Dillon County v. Lane,* 114 S. C., 494, 104 S. E., 184.

"The defendants' exceptions complaining of error as to the trial Court's findings on the facts should be overruled; this being a case at law, and the only contested issue being that of title or no title. Practically all of the defendants' exceptions came within this classification. In short, the defendants are asking the Court to review and alter the findings of the trial Court on the facts. Under the foregoing authorities defendants are not entitled to demand of this Court a departure from this well-established rule of law.

"We agree with the Circuit Judge that there is no evidence of ouster. The Circuit Judge found that there was forgery and material alteration in the deed.

"In the case of *Garvin v. Garvin,* 40 S. C., 435, 19 S. E., 79, 84, the Court approved a portion of the charge, dealing with a fraudulent deed which was given, as follows: 'In my judgment, if you find that the paper between Robert Garvin and Robert C. Garvin was fraudulent, it could not be used for any purpose, not even as "color of title," until in some way or other the judgment creditor was affected with notice of that fraud.'

See, also, *Powell v. Pearlstine,* 43 S. C., 403, 21 S. E., 328.

"There is a very recent case by our Supreme Court dealing with the question of possession and ouster; it is conclusive of any argument on these questions under the facts in this

case. This case of *Whitaker v. Jeffcoat,* 128 S. C., 406, 122 S. E., 495, reconciles the various other cases in this State on the subject and lays down the rule in simple language applicable to tenants in common. On page 496, of 122 S. E., the Court says:

" 'The presumption is that the possession of a tenant in common is for the benefit of all, and before the statute can begin to run it must appear that the holding tenant claimed the property as his own and has in unequivocal terms so notified the others.

" '*Villard v. Robert,* 1 Strob. Eq., 393; *Gray v. Givens,* 2 Hill Ek., 511; *Burnett v. Crawford,* 50 S. C., 161, 27 S. E., 645; *McGee v. Hall,* 26 S. C., 179, 1 S. E., 711; *Jefcoat v. Knotts,* 13 Rich., 50; *Gray v. Bates,* 3 Strob., 498; *Metz v. Metz,* 48 S. C., 472, 26 S. E., 787; *Coleman v. Coleman,* 71 S. C., 518, 51 S. E., 250; *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222.'

"On the same page it will be observed that the defendant had had possession of the lands in question for more than twenty years, but it was of such nature that the Court did not recognize it as such adverse possession as is necessary to establish title. The Court says: 'His possession for more than 20 years is marked by only the slightest evidence of proprietorship. He cultivated the land, it is true, and used the proceeds; but, beyond the erection of a small cotton house, his expenditures on improvements or other acts indicative of ownership are nil.'

"At the bottom of page 495 of 122 S. E., the Court said: 'His only defense against the claims of his own brothers and sisters and their children is that he acquired title by adverse possession; an unconscionable claim, that the Court should not sustain, except upon a clear preponderance of the evidence.'

"In the case of *McGee v. Hall,* 26 S. C., 179, 1 S. E., 711, on page 716 of the S. E. Reporter it will be observed that sixteen years of adverse possession was not regarded as

sufficient by one tenant in common to enable the defense of ouster to be interposed, and the case of *Gray v. Givens* is cited. The defendants have cited this case, and a close reading will show that it conforms to our conclusions.

"Further the defendants have freely cited *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222, the syllabus to that is as follows: 'In action by tenants in common possession for twenty years in face of notorious and exclusive possession by other tenants with the use and exercise of authority incident to exclusive and adverse ownership presumes ouster, and to acquire such possession heir may tack his possession to that of ancetor.'

"This case is not at variance with plaintiff's contention that there was no ouster in the *Weston case* since in the *Powers case* the Court said: 'The possession must be openly and notoriously hostile and adverse.'

"The very recent case of *Clarke v. Johnson,* 150 S. C., 351, 148 S. E., 190, decided by the Supreme Court of this State on May 13, 1929, deals with the question of ouster and adverse possession where there is tenancy in common, a state of facts very similar to those in the case at bar. We shall refer more fully to the *Johnson case* under the head of adverse possession, hereinafter discussed. The *Johnson case* was a unanimous opinion, and the syllabus on ouster is as follows: 'Possession of cotenant can never ripen into adverse title without clear evidence of ouster, since presumption is that such possession is for benefit of all.'

"In the case of *Love v. Turner,* 71 S. C., 322, 51 S. E., 101, 104, the Court laid down the following rule: 'If plaintiff had the legal title, he was presumed to be possessed of the land within the 10 years, and it was necessary to rebut this presumption by proof of continuous adverse possession of some other person for 10 years. Code Civ. Proc., 1902, §§ 99, 101; *Garrett v. Weinberg,* 48 S. C., 28, 26 S. E., 3.'

"In the case of *Lewis v. Pope,* 86 S. C., 285, 68 S. E., 680, the Court said on page 683: 'Before one can succeed in

holding lands under a claim of adverse possession, he must prove that he has been in possession for 10 consecutive years, claiming it openly, notoriously, and adversely. He cannot succeed in such claim by living on another tract and cultivating for a few years a small patch on the tract he claims, or by going on such tract and sometimes cutting wood or timber, and hauling it off for use on the tract on which he lives, but he must show that he has been doing that for 10 consecutive years.'

"Two or more unrelated holdings cannot be united in the last occupant to make up a holding of ten years possession. *Goings v. Mitchell,* 110 S. C., 380, 96 S. E., 612; *Turpin v. Sudduth,* 53 S. C., 295, 31 S. E., 245, 306; *Epperson v. Stansill,* 64 S. C., 485, 42 S. E., 426.

"A plaintiff claiming title by adverse possession must show the extent of his possession. *Cantey v. Platt,* 2 McCord, 260.

"The burden of the proof of adverse possession is on the one relying thereon. *Gourdine v. Fludd,* Harp., 232.

"Occasional and temporary use or occupation does not constitute adverse possession. *A. C. L. R. Co. v. Searson,* 137 S. C., 468, 135 S. E., 567.

" 'Adverse possession is an affirmative defense.' *Suber v. Chandler,* 36 S. C., 344, 15 S. E., 426.

"And to constitute adverse possession it must be open, notorious, exclusive, hostile, continuous, and unbroken for the whole period. *Hill v. Saunders,* 6 Rich. 62; *Ouzts v. McKnight,* 114 S. C., 303, 103 S. E., 561; *Clary v. Bonnett,* 114 S. C., 459, 103 S. E., 779; 1 R. C. L., 700-716.

"Successive possessions for less than the statutory period cannot be tacked, unless by descent cast. *King v. Smith,* Rice, 10; *Porter v. Kennedy,* 1 McMul., 354; *Garrett v. Weinberg,* 48 S. C., 28, 26 S. E., 3.

"Occasional or temporary use or occupation is not sufficient. *Jackson v. Lewis*, Cheves, 259; *McCullough v. Wall*, 4 Rich., 68, 53 Am. Dec., 715.

" 'In an action to recover land, where plaintiffs have proved a good legal title in themselves from their ancestor, under the direct provisions of Code Civ. Proc., 1912, § 126, it will be presumed that they had possession within the period of limitations, and the possession of defendants was in subordination to the legal title, casting the burden on defendants to show that their possession was adverse.' *Stokes v. Murray*, 102 S. C., 395, 87 S. E., 71.

"To the same effect, *Love v. Love*, 57 S. C., 530, 35 S. E., 398.

" 'A party claiming title to land by adverse possession, must show clearly, not only that his possession was adverse, but that it was for the full statutory period. If there be doubt on either of those points, the possessory claim must yield to the legal title.' *Abel v. Hutto*, 8 Rich., 42.

"*Lewis v. Pope*, 86 S. C., 285, 68 S. E., 680, 683, wherein the Court states: 'Before one can succeed in holding lands under a claim of adverse possession, he must prove that he has been in possession for 10 consecutive years, claiming it openly, notoriously, and adversely. He cannot succeed in such claim by living on another tract and cultivating for a few years a small patch on the tract he claims, or by going on such tract and sometimes cutting wood or timber, and hauling it off for use on the tract on which he lives, but he must show that he has been doing that for 10 consecutive years.'

"In *Bradley v. Calhoun*, 125 S. C., 82, 117 S. E., 811, 815, the Court said: "The principle is just and well-established that, where one's possession was begun in privity with or in subservience to the title of another, a *quasi* fiduciary relation is established, and, before a foundation can be laid for the operations of the statute of limitations or the defense of adverse possession by the acquisition of an outstand-

ing title, a clear, positive, and continued disclaimer of the title under which he entered and the assertion of an adverse claim must be brought home to the other party. Until the trust is openly repudiated, the *cestui que trust* may rely upon the integrity of the trustee without endangering his right by lapse of time.'

"In *Sudduth v. Sumeral,* 61 S. C., 288, 39 S. E., 534, 539, 85 Am. St. Rep., 883, the Court said: 'It is quite true that, if a person goes into possession of a tract of land as a tenant in common with another, no length of such possession can give him a title by the statute of limitations against his co-tenant, for the very obvious reason that his possession cannot be adverse to his co-tenant until an ouster is established.' "

The judgment of this Court is that the judgment below be, and the same is hereby, affirmed.

MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This action was instituted in November, 1926, by the plaintiff R. F. Weston, a son of one W. T. Weston, against the defendants, who claim title under one W. G. Weston, another son of W. T. Weston, for the partition of two tracts of land alleged to have belonged to W. T. Weston at the time of his death in 1898. One of the tracts containing 292 acres lies in Greenville County and is claimed by the defendant J. E. Morgan; the other tract containing 147 acres lies in Spartanburg County and is claimed by the defendant J. J. Gentry.

It becomes necessary to treat these two tracts separately, as the issue of title was raised as to each in the suit for partition.

All issues of law and fact were referred to E. Inman, Esq., Master of Greenville County, who filed a report dated April 7, 1928, holding that the plaintiff had failed to establish the title asserted by him and recommending a dismissal of the complaint.

Upon exceptions to the Master's report, his Honor, Judge Mauldin, filed a decree dated August 2, 1928, reversing the Master's conclusions and decreeing a sale of both tracts for partition. From this decree the defendants have appealed.

### THE SPARTANBURG TRACT

The defendant Gentry claims title to this tract under a deed from the Master of Spartanburg County, dated June 6, 1916, the sale having been made under a decree foreclosing a mortgage executed by W. G. Weston to J. C. Ward on March 8, 1910. He claims that W. G. Weston held title to the property under a deed from James McMakin to him, dated July 20, 1887, recorded in R. M. C. office of Spartanburg County, February 14, 1906, nineteen years after its execution, and eight years after the death of W. T. Weston, the father of W. G. Weston, the supposed grantee.

The plaintiff, R. F. Weston, brother of W. G. Weston and son of W. T. Weston, claims that the deed from Mc-Makin to W. G. Weston is a forgery; that it was made to his father, W. T. Weston, and was fraudulently altered before its record by W. G. Weston, erasing the middle initial "T" in the name of the grantee wherever it appeared in the deed, and inserting the letter "G" in place of it.

An inspection of the original deed, which was before the Circuit Judge and has been submitted to this Court, convinced the Circuit Judge who so found, and has convinced me, that the charge of forgery has been sustained. It is not necessary to detail the unmistakable evidences of the alterations in the deed, as the fact has been so found by the Circuit Judge and it is the same as a finding of a jury in a law issue, not reviewable by this Court. While the case was originally one for partition, an equitable proceeding, it turned upon the issue of title which was asserted by both sides.

The basic conclusion of fact, therefore, is that the deed was executed and delivered to W. T. Weston. Upon his death intestate in 1898, he left as his heirs at law, the widow and

three children, R. F. Weston, W. G. Weston, and a daughter who, with her mother, has since died intestate, casting the descent of the whole title upon the two sons, R. F. and W. G., one undivided half-interest each. The question is whether the defendant Gentry has acquired the interest of R. F. Weston; there is no question as to his acquisition of the interest of W. G. Weston.

So far as Gentry's claim to title, as a successor of W. G. Weston, is concerned, it cannot be sustained for the reason that the title of W. G. Weston originated in the alleged deed of McMakin which is shown to have been a forgery. Nor, for the same reason, can that deed be deemed color of title in W. G. Weston to give him constructive possession of the entire tract which could be tacked to the possession of Gentry in making out adverse possession under the statute; the stream is polluted at its source.

In *Garvin v. Garvin*, 40 S. C., 435, 19 S. E., 79, 84, the following charge by the Circuit Judge was approved by this Court: "In my judgment, if you find that the paper between Robert Garvin and Robert C. Garvin was fraudulent, it could not be used for any purpose, not even as 'color of title,' until in some way or other the judgment creditor was affected with notice of that fraud."

The principle is thus clearly stated in the case of *Livingston v. Peru Iron Co.*, 9 Wend. (N. Y.), 511: "A disseisin, it is said, may commence by force or fraud; an adverse possession may commence by force, but, I apprehend, not by fraud, as, for instance, under a deed obtained by fraud or by forgery. The person guilty of the fraud or forgery cannot rely upon such a deed as conveying a valid title; and the arguments which have gone the greatest length in favor of adverse possession, have proceeded on the ground that the possessor relied on his title, and believed the property which he possessed to be his own. A man may think himself the true owner of property in the possession of another, and may take forceable possession under claim of title; that is

an adverse possession; but if, with a full knowledge that such property·belongs to another, a person procures a forged deed, and enters under that, what is the *quo animo?* Is it an intent to enjoy his own, or to defraud another? And it has been often said and decided that the fact of possession and the *quo animo* the possession was taken, are the only tests. If the *quo animo* is a *bona fide* intention to enjoy his own property, that intent can never exist where the possessor knows the property is not his own. If by the *quo animo* is meant an intention to appropriate the property to his own use, right or wrong, then, indeed, is the possession of almost all intruders adverse."

See, also, 2 C. J., 190, citing *Parker v. Waycross & F. R. Co.,* 81 Ga., 387, 8 S. E., 871; *Hunt v. Drunn,* 74 Ga., 120; *Hussey v. Moser,* 70 Tex., 42, 7 S. W., 606.

As regards the Spartanburg tract, however, the claim of Gentry does not depend upon the validity of the title of W. G. Weston, nor upon the efficiency of that deed as color of title, nor upon the efficiency of certain acts of W. G. Weston alleged to constitute an ouster of the plaintiff, a tenant in common of the land with W. G. Weston. In addition to these matters, he contends that on June 6, 1916, he received a deed from the master of Spartanburg County, covering the tract in question which was sold by him under a decree of foreclosure in the case of J. C. Wall (or Ward, variously stated in the record for appeal), the mortgage being dated March 8, 1910, by W. G. Weston to Wall (or Ward), and that he has been in possession ever since. The present action was commenced in November, 1926, and I do not see how it is possible to escape the conclusion that Gentry's title has been perfected by the lapse of more than ten years. There can be no doubt but that the master's deed constituted color of title, 1 R. C. L., 715, in Gentry, and that this extended to the entire tract.

In 1 R. C. L., 727, it is said: "One who enters upon land under color of title is presumed to have entered in accord-

ance therewith; and, therefore, his actual possession of a portion of the property will, by presumption of law, be constructively extended to the boundaries defined by his color of title, excepting in so far as the land so included is in the adverse possession of another." The author cites an array of cases in support of the text, including *McColman v. Wilkes*, 3 Strob., 465, 51 Am. Dec., 637.

The evidence is undisputed that Gentry went into possession, under his deed, actually cultivated a part of the land, and inclosed a large part of it under a wire fence.

It has been suggested by the respondent that the Circuit Judge has found as a matter of fact that Gentry has not had adverse possession of the land as the rules of law require, and that his conclusion, as a fact, is binding upon this Court. If he had found as facts that Gentry had not gone into possession, had not cultivated a part and inclosed another part. I think that the Court would be concluded from reviewing such facts; but as I view the decree upon this point there does not appear anything more than a conclusion of law from the undisputed facts, which presents an entirely different situation.

## THE GREENVILLE TRACT

The defendant Morgan claims title to this tract under a deed from J. W. Norwood to him, dated November 1, 1919. Norwood held under a deed from the master of Greenville County to him, dated June 21, 1913, the sale having been made under a decree foreclosing a mortgage executed by W. G. Weston to B. M. Shuman, attorney, on April 3, 1911, recorded in RMC office of Greenville County, April 12, 1911. He claims that W. G. Weston held title to the property under a deed from W. R. Lipscomb to him dated September 15, 1886, recorded in RMC office of Greenville County, June 6, 1887.

The plaintiff claims that the deed from Lipscomb to W. G. Weston is a forgery; that it was made to his father W. T. Weston and was fraudulently altered before its

record, by W. G. Weston, erasing the middle initial "T" in the name of the grantee wherever it appeared in the deed, and inserting the letter "G" in place of it, exactly the process invoked in the McMakin deed, above referred to.

An inspection of the original deed, which was before the Circuit Judge and has been submitted to this Court, convinced the Circuit Judge who so found, and has convinced me, that the charge of forgery has been sustained. It is not necessary to detail the unmistakable evidences of the alternations in the deed, as the fact has been so found by the Circuit Judge and it is the same as a finding of a jury in a law issue, not reviewable by this Court. While the case was originally one for partition, an equitable proceeding, it turned upon the legal issue of title which was asserted by both sides. It is of interest, however, to note the evidences of alteration which are so manifest that his Honor in my opinion could have reached no other conclusion. I refer to them in this branch of the case, and not in the other, for the reason that in that branch of the case the right of Gentry to recover upon the ground of adverse possession is so clear as to render a discussion of the other points in the case unnecessary; while in this branch, it appears necessary to discuss such other points.

Commencing with the indorsement of the deed: It appears to have been made by the draughtsman of the deed and unmistakably was at first written "W. T. Weston"; there appears an erasure of the top part of the "T," with nothing substituted therefor; in the premises there is a partial erasure of the initials "W. T.," which plainly show to have been originally so written, nothing substituted therefor; in the granting clause the name "W. T. Weston" appears plainly without any effort at erasure; in the habendum appears a manifest attempt to change the "T" into a "G"; in the warranty, the same appears; and in the renunciation of dower; in the record of the deed the letter "G" plainly appears to have been written over an erasure of some other letter at every place where the grantee's name appears; the

index shows the grantee both in direct and indirect, as "W. T. Weston."

The basic conclusion of fact, therefore, is that the deed was executed and delivered to W. T. Weston. Upon his death intestate in 1898, he left as his heirs at law, the widow and three children, R. F. Weston, W. G. Weston, and a daughter who, with her mother, has since died intestate, casting the descent of the whole title upon the two sons, R. F. and W. G., one undivided half-interest each. The question is whether the defendant Morgan has acquired the interest of R. F. Weston; there is no question as to his acquisition of the interest of W. G. Weston.

So far as Morgan's claim to title, as a successor of W. G. Weston, is concerned, it cannot be sustained for the reason that the title of W. G. Weston originated in the alleged deed of Lipscomb which is shown to have been a forgery. Nor, for the same reason, can that deed be deemed color of title in W. G. Weston to give him constructive possession of the entire tract which could be tacked to the possession of Morgan in making out adverse possession under the statute; the stream is polluted at its source. See authorities cited above upon this proposition.

As regards the Greenville tract, the claim of Morgan does not depend upon the validity of the title of W. G. Weston nor upon the efficiency of that deed as color of title. Inasmuch, however, as the possession of Norwood under his deed from the master, dated June 21, 1913, continued to the date of Norwood's deed to Morgan, dated November 1, 1919 a little over six years, and Morgan's possession continued from the date of Norwood's deed to him, 1919, to the date of the commencement of the present action, November, 1926, a little less than seven years, these two possessions cannot be tacked in order to make up the statutory term of ten years to constitute adverse possession; unlike the claim of Gentry, Morgan's contention of adverse possession under the statute cannot be sustained and other points

in the case have to be considered. (It is hardly necessary to cite authorities upon the proposition that successive possessions, each less than ten years, cannot be tacked to make up the necessary ten-year period constituting adverse possession under the statute, unless the possessions are those of ancestor and heir. *Garrett v. Weinberg,* 48 S. C., 28, 26 S. E., 3; *Burnett v. Crawford,* 50 S. C., 161, 27 S. E., 645; *Kilgore v. Kirkland,* 69 S. C., 78, 48 S. E., 44; *Lewis v. Pope,* 86 S. C., 285, 68 S. E., 680; *Atlantic C. L. R. Co. v. Searson,* 137 S. C., 468, 135 S. E., 567.)

The defendant Morgan not being in a position to assert a title under adverse possession by virtue of the statute of ten years, the next question is whether he can assert it under the rule of presumption of a grant after 20 years' possession by his grantor and predecessors in title; and in the solution of this question the possessions of all parties, the defendant and his predecessors, may be tacked. Morgan's possession was seven years, Norwood's six years, making 13 years, still not enough to make up the twenty years. The question then arises whether he can avail himself of the possession of W. G. Weston, and this depends upon the further question whether there has been an ouster of his cotenant, R. F. Weston, by W. G. Weston.

Again, as in the matter of the adverse possession of Gentry, in the Spartanburg branch of the case, we are confronted by the objection that the Circuit Judge has found as a fact that there was no ouster; and again it is apparent from the decree that the Circuit Judge has not made specific findings of fact in reference to this matter but only announced his conclusions. The facts are practically admitted, at least the evidence is not contradicted as to the acts of W. G. Weston in reference to this matter, and in my opinion the issue has become one of law and not of facts, the conclusion as to which this Court has the power to review.

W. T. Weston, who is held to have been the grantee of the Lipscomb deed, died in 1898; it appears that at once

W. G. Weston took possession of the title deed and went into possession of the land and exercised ownership of it; that he paid the taxes upon it, although some of the tax receipts appear to have been issued in the name of the estate, which is not at all inconsistent with payment by him; in 1911 he mortgaged it to B. M. Shuman, attorney, allowed it to be sold under foreclosure and purchased by Norwood in 1913, fifteen years after the death of W. T. Weston, without objection on the part of the plaintiff, who was then old enough to look after his interests.

I think that the master has correctly summed up the situation thus: "The testimony shows unmistakably that the plaintiff has never exercised any of the functions of ownership or possession of any of those lands, and that the lands have been in the possession, occupancy, control and management, exclusively, of W. G. Weston from 1898 until the several tracts were sold off and in the successors from W. G. Weston on down to the present time, a period of 28 years, and R. F. Weston has testified that during that time he has never taken any steps whatever to get any benefits from or interest in these lands until the commencement of this action."

In 1905, twenty-one years before the present action was instituted, W. G. Weston had both tracts surveyed and platted and the plat recorded in Spartanburg County, though not in Greenville.

There was some testimony tending to show that W. G. Weston went into possession of the land prior to the death of W. T. Weston in 1898; and that later the plaintiff accepted part of the personal property as his share of the estate. I have not considered it necessary to go into these contentions.

I have no disposition to recede from the principles announced in the cases of *Whitaker v. Jeffcoat*, 128 S. C., 406, 122 S. E., 495, and *Clarke v. Johnson*, 150 S. C., 351, 148 S. E., 190. I think that the present case easily comes within

the doctrine there announced. To hold that the plaintiff for twenty-eight years did not have notice of the adverse claim of W. G. Weston to the land, in view of all the circumstances of ownership by him, strikes me as a very severe strain upon one's credulity.

In the case of *Powers v. Smith,* 80 S. C., 110, 61 S. E., 222, 223, plaintiffs proved legal title in themselves, and the defendants as tenants in common through inheritance from a common ancestor. They also proved possession in the defendants and their ancestor thirty-six years, and plaintiffs testified that they never had any notice that the defendants or their ancestor claimed to be exclusive owners of the land. The defendants' possession is described as renting it out, paying taxes, and otherwise using it as their own without any recognition whatever of the claim of the plaintiffs or their ancestors. On this state of facts, the Court held: 'Thus it appears the defendants' claim to the land rests on an unbroken, exclusive possession and use from 1868 to 1904, a period of 36 years, unaffected by any intervening disability of the plaintiffs or those under whom they claim. In action by tenants in common or any others, claimants to land, for 20 years in the face of notorious and exclusive possession, with the use and exercise of authority incident to exclusive and adverse ownership, is sufficient to rebut the presumption that possession is in subordination to the legal title, and to establish the presumption of a grant or deed, and almost any other presumption necessary to the protection of the possession. *Gray v. Givens,* 2 Hill, Eq., 511; *Trustees v. McCully,* 11 Rich., 429; *Massey v. Adams,* 3 S. C., 254; *McGee v. Hall,* 26 S. C., 179, 1 S. E., 711; *Stone v. Fitts,* 38 S. C., 394, 17 S. E., 136; *Trustees v. Jennings,* 40 S. C., 179, 18 S. E., 257, 891, 42 Am. St. Rep., 854; *Miller v. Cramer,* 48 S. C., 291, 26 S. E., 657; *Metz v. Metz,* 48 S. C., 472, 26 S. E., 787; *Young v. McNeill,* 78 S. C., 155, 59 S. E., 986.''

The following observations are applicable to both branches of the case, the claim of Gentry and the claim of Morgan:

There are two separate and distinct matters governed by the provisions of the Code, namely, the Statute of Limitations as applied to actions "for the recovery of real property or for the recovery of the possession thereof," and adverse possession, as invoked by a party either suing for the recovery of real property or defending such an action.

Chapter 3 of Title 2 of Part 2 the Code of Civil Procedure, beginning with Section 329, prescribes the limitations for the commencement of actions "other than for the recovery of real property." The limitation prescribed for such actions, excluded by the express terms of Section 329, is found in Section 317: "No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of such action:" Then follows a provision not pertinent to the present inquiry.

The matter of adverse possession, which, as has been held, frequently is available to a party as either a shield or a sword, is treated in Section 320 et seq. In presenting a claim of this character, the claimant is not allowed to tack successive possessions in order to make up the ten year possession, although the sum of them may be in excess of it. For this reason a defendant relying upon it may fail in this defense, but that failure will not at all interfere with his defense under the Statute of Limitations. For instance, in the Morgan branch of the case, Morgan's possession was for seven years and Norwood's for six; they cannot be tacked, and for that reason Morgan's defense under adverse possession would fall; his defense under the Statute of Limitations would not be affected by that failure, and it would be entitled to consideration. The question, then,

whether the plaintiff was seized and possessed of his interest in the land within 10 years prior to the commencement of the action, depends upon the solution of the question of ouster. If the efficiency of the acts of W. G. Weston as an ouster be established, ·the plaintiff's cause of action then arose. From what has been said I think that it was established both as to Gentry and to Morgan, and hence the plea of the Statute of Limitations as to each protects his title.

As to Morgan I think that the foreclosure of the mortgage which W. G. Weston gave to Shuman, and the sale and conveyance to Norwood in 1913, constituted an ouster and that the Statute of Limitations barred the plaintiff's action commenced in 1926.

For the same reason the foreclosure of the mortgage which W. G. Weston gave to Wall (or Ward), and the sale and conveyance to Gentry in June, 1916, constituted an ouster, and that the Statute of Limitations barred the plaintiff's action commenced in November, 1926. See *Odom v. Weathersbee*, 26 S. C., 247, 1 S. E., 890; *Sudduth v. Summeral*, 61 S. C., 291, 39 S. E., 534, 85 Am. St. Rep., 883; *McIntosh v. Kolb*, 112 S. C., 1, 99 S. E., 356; *Burnett v. Crawford*, 50 S. C., 168, 27 S. E., 645. .

By all the tokens of ouster narrated, R. F. Weston was ousted by his brother from the time of the making of the survey and plat in 1905.

(1) The claiming tenant alone has cultivated the land.

(2) There was a dwelling house which was rented out by the claiming tenant alone.

(3) It was considered the property of the claiming tenant more than twenty years.

(4) It was surveyed by the claiming tenant and platted in his name and the plat recorded more than twenty years before the commencement of this action.

(5) Evidence of his exclusive occupancy by cultivating, renting, and logging is undisputed.

(6) All the evidence of declarations by the claiming tenant is that he owned the land, and such declarations extend back more than twenty years before the commencement of the action.

It is not an agreeable aspect of the case that no complaint was made by the plaintiff for nearly thirty years after W. G. Weston took possession of the lands, and only then when W. G. Weston who has acted a sorry part in the whole transaction, after he had lost by his own acts all interest in the property, turned upon those who had trusted to his title and paid out their money, in an effort to "slip" to his brother the evidence of his own malefactions in order that he might recover an interest in the property.

For these reasons I think that the decree of his Honor, Judge Mauldin, should be reversed, and the complaint dismissed.